RALEIGH BANKING AND TRUST COMPANY v. SAFETY TRANSIT LINES, INC.

(Filed 14 May, 1930.)

1. **Landlord and Tenant B a: Corporations G e—Lessee corporation's seal is not required for the validity of a lease.**

It is not required by statute that a lessee corporation should sign a lease, C. S., 1138, applying only to conveyances, and the failure of a lessee corporation to affix its seal to a lease to it of lands necessary to the purpose of its business does not of itself render the lease invalid.

2. **Corporations G c—The president of a corporation is a general agent and has implied authority to lease property for the corporation.**

The president of a corporation, *ex vi termini,* is the general agent of the corporation with the implied authority to lease lands or buildings necessary for the business purposes of the corporation, and an instrument of this character signed by him in his official capacity is sufficient to bind the corporation though he may have had no express authority to do so, and where the lessor has made the lease contract with the corporation through the president, and there is no evidence that he had notice of any limitation of the implied authority of the president to execute the lease in question, he is not bound by any such secret limitation.

**3. Landlord and Tenant B b—In this case held: if signature of other lessees was condition precedent, defendant lessee waived condition.**

Where certain bus lines operating within a city are required by order of the Corporation Commission to establish and operate a union bus station therein for the better accommodation of the public, and one of the bus lines, acting through its president, leases a station to be used by all the bus lines jointly, and assures the lessor that arrangements had been made with other bus lines for their signatures to the lease, and the various companies have used the premises for a union passenger station: *Held*, in an action on the lease contract there is no evidence that the signatures of the other lessees was a condition precedent to the liability of the company executing the lease through its president, and the statement of the president that he had an oral agreement with the other lessees, and the fact that possession was taken by the lessees under the terms of the lease is a waiver of such condition by the company executing the lease.

**4. Appeal and Error E d—Where the record is conflicting, the case will be remanded for sufficient finding of fact.**

Where, in an action on a lease contract brought against the purchaser of the lease at the sale of the insolvent lessee's assets, the record recites that the receiver of the lessee and the purchaser of the assets at the receiver's sale had repudiated the lease contract, it will ordinarily be held as a matter of law that the lease contract had been breached, but where the record is conflicting as to whether the contract had been breached, the case will be remanded for a definite finding of fact.

CIVIL ACTION, before *Harris, J.,* at October Special Term, 1929, of WAYNE.

A jury trial was waived and the trial judge found the facts. The facts so found are substantially as follows:

1. On 12 June, 1925, the Corporation Commission made an order that all motor vehicle carriers operating to, from and through the city of Goldsboro should establish and maintain in said city a union station so centrally located as to best serve the public.

2. On 12 July, 1925, W. A. Royall, a citizen of Goldsboro, and the owner of a certain lot therein, made a proposed contract of lease with the Safety Transit Lines, Inc., Seashore Transportation Company, both North Carolina corporations, George B. Patrick and John A. Vinson, trading as Patrick & Vinson, and Ashley Southerland and Malcolm Southerland, trading as Southerland Brothers, the owners of all bus lines entering the city of Goldsboro.

3. By the terms of said contract Royall proposed to lease to said transportation companies for a period of ten years a certain lot of land owned by said Royall, to be used as a bus station. This lease was signed by S. T. Gresham for and in behalf of Safety Transit Lines, but was not signed by any of the other parties. Gresham was president of the Safety Transit Lines and stated to° Royall prior to signing the agree-

ment that the Safety Transit Lines, Inc., "would be responsible for the lease regardless of the other signatures. Gresham, as president of Safety Transit Lines, Inc., also advised Royall that he had made arrangements with the other parties who were using the bus station on the basis of the old bus station." Whereupon Royall did not secure the signatures of other parties using the bus station.

4. The corporate seal of the Safety Transit Lines was omitted from said contract, and it was not attested by the secretary of the corporation. There was no evidence that said Gresham as president was authorized to enter into said contract or execute the same. After the execution of the agreement Royall proceeded to construct on his property a building especially designed as a bus station at an approximate cost of $51,000. Gresham, president of the Safety Transit Lines, Inc., frequently visited the bus station and consulted with Royall and the architect directing its construction. Certain modifications and changes were made in the station under a verbal agreement between Royall and Gresham as president of said corporation, to the effect that the annual rental would be increased by ten per cent by reason of enlarging the building and certain other changes and improvements. The architect's drawings of the changes were submitted to Gresham and approved by him in writing as president of Safety Transit Lines, Inc.

5. Subsequently, to wit, on 22 January, 1929, Royall and wife executed a lease for said bus station to the Safety Transit Lines, Inc., and Seashore Transportation Company, providing for a certain annual rental. This lease was never submitted to or approved by the Seashore Transportation Company or Patrick and Vinson or Southerland Brothers, and was never executed by Seashore Transportation Company. However, said lease was duly executed by Royall and his wife and signed: "Safety Transit Lines, Inc., by S. T. Gresham, President. Attest: S. H. Hassenger." The lease was duly acknowledged by Royall and wife before a notary public, who took the private examination of Mrs. Royall. The following certificate appears on the lease: "North Carolina, County of Wake. This the 23d day of January, 1929, before me, a notary public, personally came S. T. Gresham, who being by me duly sworn, says that he is president of the Safety Transit Lines, Inc., and that the seal affixed to the foregoing instrument in writing is the corporate seal of said company, and that said writing was acknowledged and sealed by him in behalf of said corporation by its authority duly given, and the said S. T. Gresham acknowledged the said writing to be the act and deed of said corporation. Witness my hand and notarial seal, this the 23d day of January, 1929. W. F. Black, Notary Public."

However, the seal of the corporation was not affixed to the foregoing paper-writing, and it was never submitted to the stockholders or direc-

tors of the Safety Transit Lines, Inc., for their approval. Gresham, president of Safety Transit Lines, advised Royall that he wanted the station there and would pay the rent, and that he had a verbal agreement with other bus companies using the bus station for a partial contribution to the expense thereof.

Upon the foregoing the court found that the proposed contract was never completed, and that the paper-writing did not become a contract between the parties or binding upon either party.

6. The court further found that the bus station since its completion has been under the control and management of the four bus companies operating into the city of Goldsboro, and that "under the order and direction of the Corporation Commission the said bus lines verbally agreed to the contract for rental and division of the rent, and that they selected a manager for the bus station, who has had active charge and management thereof since completion and who apportioned and collected the rents from each of said bus companies and paid said rent to said Royall and Graves J. Smith, trustee for said Royall." Thereafter the Safety Transit Lines, Inc., was placed in the hands of receivers, but said receivers immediately after receivership denied any obligations under said contract.

7. The receivers sold the property of the Safety Transit Lines to W. Bond Collins and his associate, Safety Transit Company, and at the same time assigned all title and interest in said lease to Safety Transit Company. Collins and Safety Transit Company are solvent.

8. The court further found that the receivers never acquired an interest in said contract, or that whatever interest the receivers had in said property was assigned to Safety Transit Company. The court further found that if there was a contract existing, there had been no breach of same upon the part of Safety Transit Lines, Inc., or its receivers.

9. The court further found that the reasonable rental value of the bus station during the remaining period of the lease was $125 a month.

Subsequent to 16 September, 1929, the purchaser of Safety Transit Lines, to wit, Safety Transit Company, notified Royall that it denied all liability under the alleged lease if any such lease existed. Royall filed a claim with the receivers of Safety Transit Lines, Inc., for $18,071.10 upon the theory that the total rent for the entire term of the lease would be $33,156; that $959 had been paid, and that the market value of the balance of the term of the lease, which was ten years, was $1,500 per year, amounting, therefore, to $14,125 for the remainder of the term. The receivers declined to accept said claim.

After hearing the evidence and after making the findings of fact as above set out, the trial judge rendered judgment as follows: "Upon the

basis of all the facts as found by the court, the court concludes as a matter of law and fact that the receivers are not indebted to said W. A. Royall and wife and Graves J. Smith, trustee, in any amount on account of the alleged contract."

From the foregoing judgment the plaintiff appealed.

*Kenneth C. Royall and J. N. Smith for plaintiff.*
*William B. Jones and Clyde A. Douglass for receivers.*

BROGDEN, J. The record presents the following questions of law:

1. Is the acceptance of the lease by Safety Transit Lines, Inc., void by reason of the fact that the corporate seal was not affixed thereto?

2. Was Gresham, president of Safety Transit Lines, authorized to consent to said lease?

3. Did the Safety Transit Lines, Inc., ratify said lease by taking possession of the property and using the same until the receivership?

4. Did the failure of Seashore Transportation Company to sign the lease release the obligation of Safety Transit Company?

No statute of this State has been called to our attention requiring a lessee to sign the lease. The provisions of C. S., 1138 apply to conveyances, and it has never been held in this jurisdiction that the assent of a lessee to the terms of the lease is a conveyance. Hence, the failure to affix the corporate seal to the acceptance of the lease by the lessee would not seem to be vital. Indeed, it was held in *Mershon v. Morris,* 148 N. C., 48, 61 S. E., 647, that: "The ancient rule that a corporation could act only by its seal has been greatly relaxed in later times, if, indeed, not wholly abrogated." In discussing the absence of a seal upon a title retaining contract for personal property in *Mershon v. Morris, supra,* this Court said: "There was no necessity for the corporate seal. For the varied transactions of a business or manufacturing corporation it would be impracticable to require every letter, order, contract, note, check or draft to have the corporate seal attached." Even if the corporate seal be affixed it is only prima facie evidence that it was so affixed and that the conveyance was executed by proper authorities. *Duke v. Markham,* 105 N. C., 131, 10 S. E., 1017; *Edwards v. Supply Co.,* 150 N. C., 173, 63 S. E., 740; *Chatham v. Realty Co.,* 174 N. C., 671, 94 S. E., 447.

The court finds that Gresham as president of Safety Transit Lines, Inc., had no express authority to assent to the lease or sign said lease agreement. There is no finding that said president had no implied authority to accept said lease or that Royall, the lessor, had notice of any lack of such authority. The president of a corporation is *ex vi termini* its general agent. *Davis v. Ins. Co.,* 134 N. C., 60, 45 S. E.,

955; *Bank v. Oil Co.,* 157 N. C., 302, 73 S. E., 93; *Cardwell v. Garrison,* 179 N. C., 476, 103 S. E., 3. In the *Cardwell case, supra,* there was a resolution passed by the directors that no contract or valuable papers should be valid without the signature of the secretary and treasurer. The president endorsed notes of the corporation to the plaintiff. The court said: "This being true, the legal title to these notes would, in our opinion, pass by the endorsement of the president of the company, notwithstanding the resolution of the directors establishing limitations upon his powers. Such endorsement being within the scope of his apparent powers, and coming under the accepted and wholesome rule that a principal who has clothed his agent with apparent authority to do an act may not repudiate such authority, and the effect of it by reason of private instructions or limitations uncommunicated or unknown to the other party."

Again in *Morris v. Basnight,* 179 N. C., 298, 102 S. E., 389, in discussing a contract to convey land, signed by the secretary, the Court said: "The contract to convey is sufficient in form, and having been executed by the general manager of the company, apparently within the course and scope of his powers, and in the line of the company's business, is prima facie binding on the company. And, if it were otherwise, the company having acquired the plaintiff's interest in his father's land and the timber thereon under and by virtue of the act of the secretary and general manager, are concluded on this question. They will not be allowed to accept and hold the benefits of the agreement and repudiate the authority of the agent by whom it was made."

In the case at bar the president of the Safety Transit Lines was dealing with the plaintiff for a period of six months. The company was required to join in the erection of a bus station. The act of the president was, therefore, in line with the company's business, and the negotiations for the lease were in furtherance of such business. Indeed, it appeared that the company was required to secure a bus station by order of the Corporation Commission, and hence the president in so acting was discharging for his corporation a duty duly imposed by lawful authority. Under these circumstances and in the absence of notice to the plaintiff of any limitations upon the general power of the president, it cannot be held that the contract was not binding upon the defendant, Safety Transit Lines, Inc.

It is also suggested that the other bus companies did not sign the acceptance of the lease or lease agreement. However, it is further found as a fact that Gresham, president of Safety Transit Lines, Inc., stated to the plaintiff, Royall, "that he had a verbal agreement with other bus companies using the bus station for a partial contribution of the expense thereof."

Moreover, the court further found as a fact "that the said bus station is now and has been since its completion under the control and management of the four bus companies operating in the city of Goldsboro; that under the order and direction of the Corporation Commission the said bus lines verbally agreed to contract for rental and division of the rent." There is no evidence or finding that the contract between the plaintiff and Safety Transit Lines, Inc., was conditioned upon the signature of other parties. Clearly, the aforesaid statement of Gresham was a waiver of the signature of other parties so far as the Safety Transit Lines, Inc., is concerned; and the further fact that possession of the bus station was taken under and in accordance with the terms of said paper writing would of itself constitute a waiver of such signature.

The court found as a fact that there had been no breach of contract upon the part of Safety Transit Lines, Inc., or its receivers. The court also found as a fact that "the receivers at no time indicated a purpose or desire to take over said contract or to ratify or be bound by the terms of the same, but on the contrary, immediately after the receivership, denied any obligation thereunder."

The court also found as a fact that the assignee or purchasers of the lease at the receiver's sale, to wit, Safety Transit Company, also repudiated the lease and refused to assume any responsibility thereunder. Ordinarily the positive repudiation of a lease or denial of liability thereunder would work a breach thereof as a matter of law. However, the findings with respect to this particular phase of the case are inconsistent and conflicting, and we are unable to determine the merits of the question of law involved upon the present state of the record; and for this reason we are minded to remand the cause to the Superior Court of Wayne County in order that it may be specifically and definitely determined whether there has been a breach of the lease by the Safety Transit Lines, Inc., or its receiver or the purchaser of the lease at the receiver's sale. *Fullenwider v. Rendleman,* 196 N. C., 251.

There is no finding that the amount of damages claimed by the plaintiff is based upon an erroneous theory or not supported by both the law and the facts. Therefore, we do not discuss this phase of the case. Apparently the claim is based upon the theory of damages approved by this Court in *Monger v. Lutterloh,* 195 N. C., 274, 142 S. E., 12.

Remanded.