N. W. WARREN v. LITTLETON ORANGE CRUSH BOTTLING COMPANY, INCORPORATED.

(Filed 8 March, 1933.)

1. **Corporation G a—Assumption of debt contracted for corporate property held not ultra vires the corporation.**

    A contract executed by a corporation in the transaction of its business providing for the assumption by the corporation of a debt contracted by others for the purchase of property necessary to the prosecution of the corporation's business is binding on the corporation if authorized and properly executed by it.

2. **Corporations G e—Corporate seal is not necessary to contract executed by general manager in the transaction of the corporation's business.**

    The corporate seal is not necessary to a contract executed by the president and general manager of a corporation under which the corporation assumed a debt contracted for property necessary to the transaction of the corporation's business.

3. **Corporations G c—President and general manager of corporation had power to execute contract in this case without authorization of its directors.**

    The president and general manager of a corporation has the power, without authorization of its board of directors, to bind the corporation by a contract incidental to its business which is executed in good faith and which provides for the assumption by the corporation of a debt contracted by others for property necessary to the transaction of the corporate business.

4. **Corporations G e: Contracts A a—Extension of time for payment of notes held sufficient consideration for assumption of other debt due payee.**

    The extension of time given a corporation for the payment of its notes is a sufficient consideration for the corporation's contract with the payee assuming a debt due the payee which was contracted by its president and others individually for property necessary to the transaction of the corporate business.

APPEAL by plaintiff from *Moore, Special Judge,* at October Term, 1932, of HALIFAX. New trial.

On 14 November, 1929, the defendant purchased property from the plaintiff at $32,000, and made a mortgage reciting the payment of $12,000 in cash or other securities and the execution of notes for $20,000—one for $2,000 and six for $3,000 each. The note for $2,000 was paid at maturity. On 31 October, 1931, the parties entered into negotiations for an extension of time for the payment of the note next due. The purported agreement of 31 October is as follows:

"Littleton, N. C., 31 October, 1931.

This agreement made this 31 October, by the Littleton Orange Crush Bottling Company and Mr. N. W. Warren, as follows: That the note now or will be due on 4 November, for $3,000 and interest amounting to $180 making a total of $3,180 will be extended with the understanding that we pay Mr. Warren $1,000 on above note at maturity, and $1,000 in thirty days from 4 November, and thereafter $500 per month until the balance has been paid, we are also indebted to Mr. Warren, as interest $720 which will be paid as above stated.

Signed: N. W. Warren.

Signed: Littleton Orange Crush Bottling Co., by C. E. Carter.

Witness: R. W. Carter, Jr."

There is evidence that the defendant complied with the contract except as to the payment of $720. The plaintiff testified that the $720 item "represents the interest on the $12,000 notes, their individual notes." The individual notes were made to the plaintiff: $5,000 by C. E. Carter, $5,000 by Mrs. Bena Crockett, and $2,000 by Dr. Carter.

The plaintiff brought suit to recover judgment for $720 and at the close of his evidence the court intimated that he could not recover. The plaintiff took a nonsuit and appealed.

*Julian R. Allsbrook and Cromwell Daniel for plaintiff.*
*George C. Green for defendant.*

ADAMS, J. The only question is whether the evidence construed most favorably for the plaintiff should have been submitted to the jury. The notes referred to in the contract were given for the purchase of property necessary for the prosecution of the defendant's business, and the contract under consideration was incidental to the business. Being incidental, if it was authorized and was properly executed the contract is binding on the defendant. *Hospital v. Nicholson,* 189 N. C., 44.

The corporate seal was not necessary. In *Mershon v. Morris,* 148 N. C., 48, the Court, after saying that the ancient rule that a corpora-

10—204

tion could act only by its corporate seal has been greatly relaxed in later times, if, indeed, not wholly abrogated, approved the following quotation from 10 Cyc., 1003: "Excluding the operation of express statutes, a very extensive principle of the law of corporations, applicable to every kind of written contract executed ostensibly by a corporation and to every kind of act done by its officers and agents professedly in its behalf, is that, when the officer or agent is the appropriate officer or agent to execute a contract or do an act of a particular kind in behalf of the corporation, the law presumes a precedent authorization, regularly and rightfully made, and it is not necessary to produce evidence of such authority from the records of the corporation, always provided that the corporation itself had the power under its charter or governing statute to execute the contract or to do the act."

We find nothing in the evidence which as a matter of law rebuts the presumption of previous authorization. The plaintiff testified that he had attended a meeting of the directors held with reference to the agreement on 29 October. The defendant had five directors; only four of them attended the meeting; Mrs. Crockett had not been notified and did not attend. The defendant insists that as there is no evidence of by-laws fixing the time and place of the meeting any pretended authorization of the contract by the directors is void, and for this position it cites *Bank v. Lumber Co.,* 116 N. C., 828. In that case it was shown that the meeting was held at an unusual time and place and that the agent who attempted to dispose of the property was the treasurer of the corporation. The contract in controversy in the present case was executed on behalf of the defendant by C. E. Carter, and witnessed by R. W. Carter, Jr., who was a director. C. E. Carter held the position of president, director, and general manager of the corporation. It was in evidence that he had full authority with respect to the execution of contracts, notes, checks, and other instruments relating to the business of the defendant.

The president of a corporation is *ex vi termini* its general agent. *Davis v. Ins. Co.,* 134 N. C., 60; *Bank v. Oil Co.,* 157 N. C., 302; *Trust Co. v. Transit Lines,* 198 N. C., 675. The term "general agent" implies general powers; hence a general agent can ordinarily make contracts for the company. *Grabbs v. Ins. Co.,* 125 N. C., 389, 397. In *Cardwell v. Garrison,* 179 N. C., 476, it was held that the endorsement of notes by the president of a corporation was binding notwithstanding a resolution passed by the directors that no contract should be valid unless it bore the signature of the secretary and treasurer.

If it be granted that the president of a corporation as such has no power to bind the corporation by contracts executed by him in its name without the express authority of its board of directors, a general

manager, if his authority is not limited, has power to bind the corporation by contracts made in good faith and within the corporate power, without any resolution of the board of directors expressly authorizing the contracts. *Lumber Co. v. Elias,* 199 N. C., 103. Upon the undisputed evidence we are of opinion that the authorization of the directors was not essential to the validity of the contract.

It is argued, however, that the plaintiff is trying to subject the defendant to liability for the debt of individuals. Without deciding the question let us concede the proposition that the debt the plaintiff is seeking to recover was contracted by C. E. Carter, Mrs. Crockett, and Dr. Carter; the defendant, nevertheless, had the legal right to contract for value to pay the debt of another. The contract sued on is supported by a valuable consideration—that is, the grant by the plaintiff to the defendant of an extension of time within which the defendant should pay the note. In *Fawcett v. Fawcett,* 191 N. C., 679, it was said: "Any benefit to the promisor or any loss or detriment to the promisee is a sufficient consideration to support a contract. In *Brown v. Ray,* 32 N. C., 72, it is said that to make a consideration it is not necessary that the person giving the promise should receive or expect to receive any benefit; it is sufficient if the other party be subjected to loss or inconvenience. A promise for a promise, a right, interest, or benefit accruing to the one party, or forbearance, detriment, or loss given, suffered or undertaken by the other, is sufficient to constitute a valuable consideration. *Institute v. Mebane,* 165 N. C., 644; *Brown v. Taylor,* 174 N. C., 423; *Mfg. Co. v. McCormick,* 175 N. C., 277; *Exum v. Lynch,* 188 N. C., 392."

The defendant having profited by the extension should not retain the benefit and at the same time repudiate its obligation. Whether the transaction was usurious can be determined by a full disclosure of the facts.

Upon the evidence in the record we think the case should have been submitted to the jury.

New trial.