PALOMINO MILLS, INC., v. DAVIDSON MILLS CORPORATION, C. W. BYRD, HENRY ROSE, AND HERBERT STEIN.

(Filed 20 April, 1949.)

**1. Removal of Causes § 4b—**

The allegations of a petition for the removal of the cause from the State to the Federal Court will be taken as true for the purpose of the motion.

---

MILLS *v.* MILLS.

---

**2. Same—**

In order to be entitled to removal from the State to the Federal Court on the ground of fraudulent joinder, the facts alleged in the petition must compel the conclusion as a matter of law, aside from the deductions of the pleader, that the joinder is fraudulent.

**3. Same—**

Where plaintiff has a joint and separable cause of action against a resident and a nonresident, the joinder of the resident will not be held fraudulent even though the joinder be made for the sole purpose of preventing removal to the Federal Court.

**4. Corporations § 25b—**

An officer of a corporation who commits a tort is liable therefor individually notwithstanding that he was acting for the corporation.

**5. Corporations §§ 6a (2), 25b; Fraud § 4—**

Ordinarily the president of a corporation is *ex vi termini* its head and general agent, and when he signs a bill of sale for goods on hand in a large amount five days after inventory, he will be held to actual or constructive knowledge of a material misrepresentation in the bill of sale.

**6. Removal of Causes § 4b—Upon facts alleged in petition, cause existed against resident corporate president, and therefore his joinder was not fraudulent.**

Plaintiff instituted action for damages for fraudulent misrepresentation in the sale of a large inventory of goods against a nonresident corporation and its resident president who signed the bill of sale. Defendant corporation moved for removal to the Federal Court on the ground of fraudulent joinder. *Held:* Conceding the truth of the allegations of the petition that its president made no misrepresentations and did not know of the sale until he executed the bill of sale upon direction of the board of directors, the president is charged with knowledge of the misrepresentation and participated in the perpetration of the fraud by signing the same, and therefore a cause of action exists in plaintiff's favor against the president individually, and his joinder cannot be held fraudulent.

APPEAL by Davidson Mills Corporation from *Rousseau, J.,* at November Civil Term, 1948, of ROWAN.

Civil action to recover $10,665, with interest, as damages resulting from alleged false and fraudulent representation by which plaintiff was induced to purchase certain personal property,—heard upon petition of corporate defendant for removal to District Court of the United States for the Middle District of North Carolina for trial, upon ground of alleged fraudulent joinder.

Plaintiff alleges in its complaint these pertinent facts: (1) That it is a corporation organized and existing under the laws of North Carolina, with its principal office in Rowan County,—its name having been changed in September, 1947, from Davidson Cotton Mills Company to "Palomino

Mills, Inc."; (2) that (a) the defendant Davidson Mills Corporation is a Delaware corporation, with one of its principal offices located in the city of Concord, North Carolina, with C. W. Byrd as an officer, to wit, its president, (b) that C. W. Byrd is a resident of Concord, North Carolina, and (c) that Henry Rose and Herbert Stein are stockholders, officers and directors of said Davidson Mills Corporation, and both are residents of the city of New York, State of New York, as plaintiff is informed and believes; (3) that on or about 5 March, 1947, plaintiff purchased, through Henry Rose, from Davidson Mills Corporation, C. W. Byrd, president, by bill of sale (Copy of which is attached to, and asked to be made a part of the complaint as fully as if written therein), certain personal property itemized and listed in Exhibit A attached to said bill of sale. (The bill of sale so attached to the complaint reads as follows:

### "BILL OF SALE

"NORTH CAROLINA

MECKLENBURG COUNTY

"KNOW ALL MEN BY THESE PRESENTS THAT DAVIDSON MILLS CORPORATION, a Delaware corporation with an office and place of business in the Town of Davidson, Mecklenburg County, North Carolina, has this 5th day of March 1947, in consideration of ONE HUNDRED ($100.00) DOLLARS and other valuable considerations, to it paid by DAVIDSON COTTON MILLS COMPANY, a North Carolina corporation with its principal office and place of business in Salisbury, Rowan County, North Carolina, has bargained, sold and delivered to said DAVIDSON COTTON MILLS COMPANY the personal property listed on the attached exhibit marked EXHITIT A, consisting of merchandise inventories of DAVIDSON MILLS CORPORATION on hand as of the close of business on February 28, 1947;

"To HAVE AND TO HOLD the same unto the said DAVIDSON COTTON MILLS COMPANY, its successors and assigns, and DAVIDSON MILLS CORPORATION hereby warrants the said property to be free from any and all encumbrances and does warrant the title thereby given to be good and indefeasible.

"IN TESTIMONY WHEREOF, DAVIDSON MILLS CORPORATION has caused this Bill of Sale to be executed by its duly authorized officers and its corporate seal to be hereto affixed, the day and year first above written.

DAVIDSON MILLS CORPORATION,

By: C. W. Byrd, President.

Attest:

    C. A. POTTS, Secretary.          (Corporate Seal.)")

MILLS v. MILLS.

(And, Exhibit A reads as follows:

## "EXHIBIT A

|            |   |                 |   |       |                |
|------------|---|-----------------|---|-------|----------------|
| 54,120     | # | White Cotton    | @ | .2902 | $ 15,705.62    |
| 18,589     | # | Cleaned Cotton  | @ | .2984 | 5,546.96       |
| 148,227    | # | Dyed Cotton     | @ | .3563 | 52,813.28      |
| 800        | # | Dyed Cotton     | @ | .35   | 280.00         |
| 1,093      | # | Ground Waste    | @ | .03   | 32.79          |
| 69,336     | # | Work in Process | @ | .50   | 34,668.00      |
|            |   | Dyes & Chemicals |  |       | 9,032.89       |
|            |   | Supplies        |   |       | 9,371.84       |

$127,451.38)

(4) that line three of said Exhibit A called for 148,227 pounds of dyed cotton @ .3563 per pound, amounting to $52,813.28; (5) "that on the 5th day of March, 1947, the defendants, C. W. Byrd, Henry Rose and Herbert Stein, being officers and directors of the Davidson Mills Corporation, in order to induce the plaintiff to purchase the bill of goods set out in Exhibit A, falsely and fraudulently represented to the plaintiff that the said 148,227 pounds was dyed cotton; that the plaintiff relying upon said representation, bought from the defendants the said 148,227 pounds which they had fraudulently represented to it to be dyed cotton at the price of .3563 per pound, and paid the defendants for the same the sum of $52,813.28; and that 100 bales of said merchandise purchased from the defendants was not dyed cotton but was of a quality greatly inferior, which was known as dyed waste or 'frog hair,' as the defendants then well knew, to the plaintiff's damage in the sum of approximately $7800"; and "that said defendants further falsely and fraudulently represented to plaintiff and to W. F. McCanless, officer of plaintiff, that certain colored yarn in the inventory of merchandise (dyed cotton) bought by plaintiff from defendants was sold to Sure-Fit Products Company at 84c per pound, when in truth and in fact it was not sold and plaintiff sustained a loss of $2720.00." Thereupon plaintiff prayed judgment against the defendants, and each of them, in the sum of $10,665.00, together with interest and costs, etc.

The defendant Davidson Mills Corporation, appearing specially for the purpose, and in apt time, filed its verified petition, with bond for removal of the cause to the District Court of the United States for the Middle District of North Carolina for trial upon the ground of an alleged fraudulent joinder,—alleging, among other things, the following:

"7. That the plaintiff has wrongfully and fraudulently joined as a co-defendant with your petitioner, C. W. Byrd, who is immaterial, unneces-

10—230

sary and an improper party to this controversy . . . one wholly between . . . the plaintiff, a citizen and resident of the State of North Carolina . . . and the petitioner, a citizen and resident of the State of Delaware and a non-resident of the State of North Carolina;

"8. That C. W. Byrd . . . had nothing to do with the sale of the cotton mill and other assets connected therewith sold by this petitioner to the plaintiff and its predecessors in interest; that the said C. W. Byrd never owned, and does not now own, any stock of this petitioner; that he had nothing to do with the planning the sale by this petitioner of its cotton mill and other assets and did not know that any sale was contemplated until he was advised by Henry Rose, the chairman of the board of directors of this petitioner, that a sale had been made; that as a matter of fact, the sale by this petitioner was carried out pursuant to an agreement entered into on January 31, 1947, between this petitioner and W. F. McCanless, the president of the plaintiff in this action; that said sales agreement was entered into in the city of New York when C. W. Byrd was not present and knew nothing of negotiations pertaining to said sale; that the sales agreement was signed on behalf of this petitioner by Henry Rose, chairman of the board, and by W. F. McCanless; that the said agreement provides for the transaction to be closed and the deed to be delivered and any other instruments of conveyance that may be proper or necessary to be delivered upon payment of the purchase price in Charlotte, North Carolina, on March 5, 1947; that C. W. Byrd never, at any time, made any representation to W. F. McCanless, or any of his associates, pertaining to any of the assets being sold by this petitioner and was not present when any negotiations took place; that on March 5, 1947, pursuant to the terms of the sales agreement, dated January 31, 1947, a meeting took place in Charlotte, North Carolina, and at that time, W. F. McCanless, in writing, assigned a part of his interest in the purchase agreement to Davidson Cotton Mills Company, a North Carolina corporation; that the purchase price having been paid to this petitioner, the board of directors of this petitioner directed C. W. Byrd, in his capacity as president of this petitioner, to sign the deed of conveyance and the bill of sale; that the said C. W. Byrd had no authority to make any sale of any assets of this petitioner and merely acted in accordance with instructions and directions given him by Henry Rose, chairman of the board of directors of this petitioner;

"9. That . . . any damages which the plaintiff received or incurred, as a result of said purchase and sale was neither the direct or proximate cause or result of any representations or inducements made by C. W. Byrd; that the rights of the real parties in interest to his controversy can be finally adjudicated without the presence of the defendant C. W. Byrd; that the joinder in the said suit of C. W. Byrd, who is a resident of the

MILLS *v.* MILLS.

State of North Carolina, as a co-defendant in this action, is not in good faith and is fraudulently and manifestly for the purpose of attempting to deprive this petitioner of its right to remove this action to the United States District Court, and the plaintiff well knew at the time of the beginning of this suit that C. W. Byrd did not participate in, and had no connection with, the sale by this petitioner and that the said C. W. Byrd was not a stockholder but a director in this petitioner and in no way participated in the proceeds from said sale, and he was joined as a party defendant for the sole and only purpose of preventing the removal of this cause and not in good faith."

The petition for removal being disapproved by Clerk of Superior Court, the cause came on for hearing before the Judge of Superior Court, to whom appeal had been duly taken. The Judge affirmed the order entered by the Clerk, and denied the petition.

Defendant Davidson Mills Corporation appeals therefrom to Supreme Court and assigns error.

*Hayden Clement and Walter H. Woodson for plaintiff, appellee.*

*Tillett & Campbell for Davidson Mills Corporation, defendant, appellant.*

WINBORNE, J. The rule by which petitions to remove an action from the State court to the District Court of the United States for trial on the ground of an alleged fraudulent joinder of a resident defendant is aptly stated in the case of *Crisp v. Fibre Co.,* 193 N.C. 77, 136 S.E. 238. It is there held "that when the motion to remove is made on the ground of an alleged fraudulent joinder, the petitioner is entitled to have the State Court decide the question on the face of the record, taking, for this purpose, the allegations of the petition to be true. To warrant a removal in such case, however, the facts alleged in the petition must lead unerringly to the conclusion, or rightly engender and compel the conclusion, as a matter of law, aside from the deductions of the pleader, that the joinder is a fraudulent one in law and made without right," citing *Fore v. Tanning Co.,* 175 N.C. 583, 96 S.E. 48.

In this connection, in treating the subject in the *Crisp case,* it is also declared that "if the plaintiff has a right to sue one or more resident defendants jointly with the non-resident defendant, and, even though such resident defendant be joined solely for the purpose of defeating a removal, still such joinder cannot be said to be fraudulent, for the law will not give an absolute right and then declare its use or exercise a fraud. When the liability of the defendants is joint, as well as several, the plaintiff may, at his election, sue both, and no motive can make his choice a fraud," citing *R. R. v. Sheegog,* 215 U.S. 308. See also *Chesapeake & Ohio R. Co. v.*

*Dixon,* 179 U.S. 131, 45 L. Ed., 121, 21 S. Ct. 67, and Annotation 98 A.L.R. 1057.

In the light of these principles, does it appear on the face of the record in the case in hand, taking, for this purpose, the allegations of the petition to be true, that the facts so alleged "lead unerringly to the conclusion, or rightly engender and compel the conclusion, as a matter of law, aside from the deductions of the pleader," that the joinder of C. W. Byrd, a resident of this State, as a defendant, is a fraudulent one in law and made without right? The effect of the ruling of the court below is that such joinder was not fraudulent in law and was not made without right. With this ruling we are in agreement. It appears upon the face of the record that plaintiff's alleged cause of action arose out of a transaction between it and petitioner corporation by which petitioner sold to plaintiff certain personal property specifically described in an exhibit to a certain bill of sale, dated 5 March, 1947, executed in the name of petitioner corporation by C. W. Byrd, president, attested by its secretary and under its corporate seal; and that plaintiff alleges that on 5 March, 1947, defendants, C.W. Byrd and two others, in order to induce it to purchase the bill of goods set out in the said exhibit, made false and fraudulent representations in respect to certain items of the personal property, upon which representations it relied to its damage. This states a cause of action in tort against C. W. Byrd, as well as against the corporate defendant. See *Minnis v. Sharpe,* 198 N.C. 364, 151 S.E. 735.

· In the *Minnis case,* quoting from Fletcher, Cyc. Corp., this Court declared that "it is thoroughly well settled that a man is personally liable for all torts committed by him, consisting in misfeasance, as fraud, conversion, acts done negligently, etc., notwithstanding he may have acted as the agent or under directions of another"; that "this is true to the full extent as to torts committed by officers or agents of a corporation in the management of its affairs"; that "the fact that the circumstances are such as to render the corporation liable is altogether immaterial"; that "the person injured may hold either liable, and generally he may hold both as joint tort-feasors"; that "corporate officers are liable for their torts, although committed when acting officially"; and that the officers "are liable for their torts regardless of whether the corporation is liable." But that in order to make an officer liable for the wrong of the corporation, he must be a participant in the wrongful act.

Moreover, taking the facts alleged in the petition to be true, that is, that all the negotiations leading up to the sales agreement of 31 January, 1947, were conducted by someone other than C. W. Bryd, and that he knew nothing of the proposed sale until the board of directors of the petitioner corporation directed him, in his capacity as its president, to sign the bill of sale, it apears from the petition that Byrd was both a director and

the president of petitioner corporation, and that at the closing of the transaction he, as such president, signed the bill of sale in which there appeared the specific item of personal property as to which plaintiff alleges there was a false and fraudulent representation. Thus it appears that he as president actually participated in the closing of the transaction. And, since it is the law in this State that ordinarily the president of a corporation is *ex vi termini* its head and general agent, *Phillips v. Land Co.,* 176 N.C. 514, 97 S.E. 417; *Banking & Trust Co. v. Transit Lines,* 198 N.C. 675, 153 S.E. 158; *Warren v. Bottling Co.,* 204 N.C. 288, 168 S.E. 226, it would seem to follow that at the time Byrd signed the bill of sale he must have had knowledge of what the merchandise inventories of the petitioner corporation consisted at the close of business five days prior thereto.

Indeed, for the establishment of actionable fraud it is not always required that a false representation should be knowingly made. It is recognized in this State that, under certain conditions and circumstances, if a party to a bargain avers the existence of a material fact recklessly, or affirms its existence positively, when he is consciously ignorant whether it be true or false, he may be held responsible for a falsehood; and this doctrine is especially applicable when the parties to a bargain are not upon equal terms with reference to the representation, the one, for instance, being under a duty to investigate, and in a position to know the truth, and the other relying and having reasonable ground to rely upon the statements as imparting verity. *Whitehurst v. Ins. Co.,* 149 N.C. 273, 62 S.E. 1067, and authorities there cited. See also *Unitype Co. v. Ashcraft,* 155 N.C. 63, 71 S.E. 61; *Robertson v. Halton,* 156 N.C. 215, 72 S.E. 316; *Ward v. Heath,* 222 N.C. 470, 24 S.E. 2d 5.

For reasons here stated, the record in the case in hand fails to disclose a right of removal. Hence the judgment below is

Affirmed.