## PEGRAM-WEST, INC., v. WINSTON MUTUAL LIFE INSURANCE COMPANY.

(Filed 14 December, 1949.)

**1. Frauds, Statute of, § 5—**

An agreement by a mortgage company with a lumber dealer to pay for lumber to be used in the construction of a building on the mortgaged premises is an original promise which does not come within the purview of the statute of frauds, G.S. 22-1, and parol evidence of such agreement is competent.

**2. Trial § 6—**

The trial court has discretionary power to suggest to counsel that he read to the jury certain letters offered in evidence and to interrogate a witness in regard to a matter not theretofore made clear by the testimony, and such conduct will not be held for error on objection of the adverse party in the absence of abuse of discretion.

**3. Same—**

The trial judge is not required to read authority cited by counsel in support of a motion.

**4. Same—**

The action of the court in dictating renewal motion to nonsuit at the close of all the evidence cannot be held for prejudicial error on objection of movant.

**5. Corporations § 20—**

Defendant corporation was engaged in the business of loaning money on mortgage security. The evidence disclosed that it had taken a mortgage on certain property and had advanced funds that went into the construction of a building thereon, that it wanted the building completed to improve its security, and that under these circumstances its president agreed with plaintiff, a lumber dealer, to pay for lumber to be used in the completion of the building. *Held:* Nonsuit was properly denied in plaintiff's action to recover the balance due on the purchase price of the lumber so furnished.

**6. Corporations § 6a (2)—**

The president of a corporation is *ex vi termini* its head and, nothing else appearing, may act for it in the business in which it is authorized to engage.

**7. Corporations § 19—**

A corporation authorized to engage in the business of lending money on mortgage security has implied power to obligate itself for payment of materials to be used in the construction of a building on the mortgaged premises for the purpose of enhancing its security.

**8. Corporations § 6a (2)—**

The charter and by-laws and minutes of stockholders and directors' meetings are the best evidence of any restriction on the general authority of its president to act for the corporation, and parol testimony of such restrictions is incompetent.

**9. Appeal and Error § 39f—**

An immaterial error in the statement of contentions of the appellee will not be held for prejudicial error upon appellant's exception.

APPEAL by defendant from *Phillips, J.,* at 29 August, 1949, Term of Guilford—Greensboro Division.

Civil action to recover for lumber and materials allegedly furnished on original contract for delivery to another.

These facts are admitted in the pleadings, and are in evidence: Plaintiff is a corporation engaged in the sale of lumber and building materials, with its principal office and place of business in Greensboro, North Carolina. Defendant is a corporation engaged "in the business of issuing contracts and policies of insurance on life and other insurance," and "as a part of its business it makes loans secured by real estate in Guilford and other counties in the State of North Carolina"—its principal office being in Winston-Salem, N. C. And Elwood Dixon and wife are the owners of a certain tract or parcel of land in Guilford County, North Carolina, particularly described in the complaint in this action as being on Gorrell Street.

Plaintiff further alleges in its complaint, and upon the trial in Superior Court introduced evidence tending to show these additional facts: That Elwood Dixon, desiring to construct or being in process of constructing a building upon the land above described, approached the plaintiff, on or before 16 June, 1948, and requested it to extend to him a line of credit so he could purchase certain materials which he said he expected to use in the construction of the said building, but that plaintiff declined to extend any credit to him;

"5. That said Elwood Dixon advised plaintiff that defendant was making him a loan on the proposed building and that it would pay for all building materials used in construction thereof; that at the instance of said Dixon, plaintiff called defendant on the telephone at its office in Winston-Salem, North Carolina, and related to it the statements made by said Dixon; that plaintiff offered to extend credit to the defendant for

such material as said Dixon might require for the construction of the building aforesaid;

"6. That the defendant, acting by and through its president and manager, agreed to pay plaintiff for such material as was furnished for use in the building to be constructed upon the lands of said Dixon above described;

"7. That plaintiff furnished lumber and building material to the job and for use in the construction of the building upon the real estate above described," an itemized statement of which is set out, showing date, order number, description, sales tax and charges, the items bear date '1948,'—the first on '6-16' and the last '8-6,' totaling the amount of $1,843.57.

"8. That on or about the 13th day of July, 1948, plaintiff prepared and forwarded to the defendant a statement of all materials sold it and furnished to the said Dixon up to and including July 7, 1948; that as of said date the amount due plaintiff amounted to $1,478.57; that the 7th of August, 1948, defendant issued to the plaintiff its check in the sum of $1,478.57, and advised plaintiff that it would not longer be responsible for building materials furnished said Dixon; that between July 13, 1948, date of said statement, and August 7, 1948, date of denial of further liability, plaintiff sold further materials to said defendant and charged same to said account and delivered said material to the said Dixon, as set out in paragraph 6; said additional materials amounting to $364.74 . . .," for which, after demand by plaintiff, defendant has failed and refused to pay.

Howard E. West, as witness for plaintiff, testified in pertinent part: That in June, 1948, he was connected with plaintiff as officer in charge of the conduct of the business; that he talked with an officer of the Winston Mutual Life Insurance Company after he had a conversation with Dixon; that he placed a long distance call for George W. Hill, who was an officer of the Insurance Company. . . . And the witness recites the telephone conversation in this manner: "I told Mr. Hill that Elwood Dixon had been to our yard office and I in turn had been to the site of the building with Dixon and that Dixon had made application to us for the building materials on the building and that we had declined to extend credit to Dixon; that we were not financially able to extend to Dixon the line of credit requested. Mr. Hill asked me if we would furnish the materials to his company and extend a line of credit to them." To this the court interposed: "Q. To the Insurance Company?", to which the witness answered, "To the Insurance Company, which we elected to do," and continued by saying, "I also told him that it would be necessary that the material bills be paid by the 10th of the following month, which he agreed to do. . . . At that time the masonry walls of the building were

up and the amount of the materials was not mentioned . . . The conversation was in early June 1948, and in consequence of that agreement I delivered materials to the building on Gorrell Street. . . . I knew when I called up Winston Mutual Life Insurance Company that there was a construction loan in progress by virtue of what Dixon had told me and I expected payment for the materials furnished out of the proceeds of that loan . . . The terms, amount and condition of the loan were never given me."

On the other hand, defendant, answering, admits that plaintiff sent to it statement of materials in the sum of $1,478.58, and that it issued to plaintiff its check therefor, and that it advised plaintiff it would be responsible no longer for building materials furnished to Dixon; but denies other material allegations.

And defendant, for further defense, avers: That it did not promise and agree to answer for the debt, default or miscarriage of Elwood Dixon, but did tell plaintiff that if "Dixon should complete a building, then under construction on the . . . land described in the complaint . . . defendant would agree to lend to said Dixon the sum of $3,000, and that it is a practice of the defendant in making a loan on new construction to see that bills for material are paid out of the proceeds of the loan"; that the building has not been completed as per plans and specifications shown to defendant, but that defendant granted a loan in the amount specified, and out of it paid to plaintiff the total amount of the bill presented to defendant for materials furnished.

Defendant further pleaded the statute of frauds, G.S. 22-1, as a bar to right of plaintiff to recover in this action "upon any alleged agreement made by telephone."

And on the trial in Superior Court, George W. Hill, as witness for defendant, testified in pertinent part: "I am President of the Winston Mutual Life Insurance Company. Sometime in June 1948 I received a telephone call from Greensboro; the person speaking to me represented himself to be Pegram-West. . . . He mentioned an application being made to him for materials by one Elwood Dixon. I told him we had granted Mr Dixon a loan of $3000 and out of that amount we would take care of his bills so far as that $3000 would last. So that ended our conversation . . . Prior to the application of Dixon for the additional $3000 loan, my company had made a loan to Dixon already and he was indebted to the company at that time in the sum of $5000 or $6000 . . . All of the additional loan in the sum of $3000 made to Dixon was absolutely paid out for Dixon on the bills rendered to us and there was no money left in the hands of the Winston Mutual Life Insurance Company belonging to Dixon as a result of any loan whatsoever. I did not make any request of Mr. West over the phone to furnish any material to the

Winston Mutual Life Insurance Company for the purpose of building a building for Elwood Dixon . . . We have never authorized them to extend any credit to Dixon." And the witness being interrogated by the court, as to the proceeds of the $3000 loan, testified that the company kept the money and paid Dixon's bills. And the witness further testifying on cross-examination, said: "Mr. West talked to me about this matter over the phone only once, and at that time . . . the deed of trust was already on record and . . . we had already advanced some funds that went into that building. We wanted the building completed." Immediately following the witness was asked the question, "So that you would have a good loan on a good piece of property, you were anxious that the building be completed?", to which he answered, "Yes, sir. We wanted it completed."

When the parties rested their respective cases, the court submitted the case to the jury upon these issues:

"1. Did the defendant contract and agree with the plaintiff to pay the plaintiff for such material as was furnished by the plaintiff for use in the construction of a building upon the lands described in the complaint?

"2. What amount, if any, is the plaintiff entitled to recover of the defendant?"

The jury answered the first issue "Yes," and the second "$364.74, plus interest at 6%."

Thereupon, and in accordance therewith, the court rendered judgment in favor of plaintiff and against defendant.

Defendant appeals to Supreme Court and assigns error.

*Hoyle & Hoyle for plaintiff, appellee.*
*W. Avery Jones for defendant, appellant.*

WINBORNE, J. The errors assigned by defendant, and set forth in the record as required by the rules of this Court are nine in number. And while prejudicial error is not made to appear, we consider them in proper groups.

I. Assignments of error Nos. 1, 2 and 4, relating to exceptions 1, 2 and 4, as stated by appellant, may be combined in this manner: That the court committed error (1) "in permitting the introduction of oral testimony to prove the terms of the contract, in variance with that set up in the complaint,—the statute of frauds having been specially pleaded"; (2) "in admitting testimony of a conversation with G. W Hill completely at variance with the allegations of the complaint"; and (4) "in denying the motion of the defendant to strike out the oral testimony of the plaintiff as to the terms of the contract."

Patently, these assignments of error are based upon misapprehension that plaintiff is seeking to recover upon a "special promise to answer the

debt, default or miscarriage of another," which is required by statute to be in writing and signed. G.S. 22-1. Such is not the case. The cause of action alleged in the complaint is based upon an original promise of defendant to pay for materials to be, and which were later furnished by plaintiff for use in completing the construction of a building on the land of Elwood Dixon, which, if true, does not come within the provisions of the statute, G.S. 22-1, and is not required to be in writing and signed. See *Peele v. Powell,* 156 N.C. 553, 73 S.E. 234, on rehearing 161 N.C. 50, 76 S.E. 398

Hence the testimony to which exceptions under consideration relate is pertinent to such alleged original promise of defendant. True it is, defendant denies making any such promise, and avers, and on the trial offered testimony tending to show its contention as to what was the agreement with plaintiff in respect to furnishing the materials. Thus an issue of fact arose to be determined by the jury. See *Farmers Federation, Inc., v. Morris,* 223 N.C. 467, 27 S.E. 2d 80. And evidence in support of the respective allegations of the parties, and pertinent to the issue, was admissible.

II. Assignments of error Nos. 3 and 7, unsupported by exceptions, but nevertheless considered, are these: That the court committed prejudicial error (1) "by suggesting of its own motion that counsel for plaintiff offer some letters in evidence and directing him to read them to the jury," and (2) "by entering into cross-examination of defendant's witness of his own motion."

As to the first, the record shows that in the course of the examination of a plaintiff's witness, two letters from defendant to plaintiff were identified, and, upon counsel for plaintiff offering the letters in evidence, the court merely stated "Suppose you read them to the jury." And as to the second, the court interrogated defendant's witness, its President, George W. Hill, as to whether the proceeds of the $3000 loan referred to was delivered to Dixon, or kept by defendant and disbursed by it on Dixon's credit. And the interrogation ended when the witness finally stated that the company kept the money and paid Dixon's bills,—a fact which the testimony theretofore given had not made clear.

Such matters are addressed to the discretion of the presiding judge, and, in the absence of abuse of discretion, his rulings will not be disturbed on appeal. Here abuse of discretion does not appear.

III. Assignments of error Nos. 5 and 8, purporting to cover exceptions 5 and 8, are these: "That the court committed prejudicial error" (1) "in refusing to hear the defendant's argument and citations of law in support of its motion to dismiss as of nonsuit at the close of the plaintiff's evidence and bluntly stating to counsel for defendant, 'I don't care to hear them, I am familiar with the law' "; and (2) "in refusing to

allow counsel for the defendant to make and/or argue his motions at the close of all the evidence, but briskly made such motions as he saw fit and promptly overruled his own motions."

As to the first, the record shows that when plaintiff rested its case, the court inquired "Any evidence for the defendant?", whereupon counsel for defendant stated "We wish to make a motion, your Honor, in the case at this time." And upon inquiry by the court as to "What is your motion?", counsel for defendant stated: "Our motion is to dismiss this action as of nonsuit, because . . .,"—followed by statement of counsel for defendant at some length. Whereupon the court inquired, "Is that all?", to which counsel for defendant replied: "I have some citations here if your Honor cares to hear them." Thereupon the court said: "I don't care to hear them. I am familiar with the law. Overruled. Exception." No doubt the citation of authorities is often helpful to the presiding judge, but we know of no rule of practice that requires the judge to read them.

And as to the second, at the close of all the evidence, counsel for defendant stated, "I want to make a motion." Whereupon the court stated: "Yes, sir, at the close of all the evidence defendant renews its motion for judgment of nonsuit and renews other motion made at the close of plaintiff's evidence. Motions overruled. Exceptions."

The motion usually made at the close of the evidence is for judgment as of nonsuit, and there is nothing out of the ordinary for the judge to dictate the motion and the ruling on the motion. And the record fails to show that counsel for defendant asked to make any other motion.

So, as we read the record, while it shows exceptions to the denial of motions for nonsuit, the assignments of error are restricted to matters beside the point.

Nevertheless, if the assignments of error were to the actual rulings of the court on the motions for judgment as of nonsuit, the evidence as to the alleged transaction, and its attendant circumstances, taken in the light most favorable to plaintiff is abundantly sufficient to take the case to the jury on the issues raised by the pleadings.

The defendant, a corporation authorized to make loans on real estate in Guilford County, North Carolina, had already advanced some funds that went into the construction of the building being erected on the land of Elwood Dixon located in said county, and had a deed of trust on the land to secure the loan, and wanted the building completed, so that, as its president testified, it would have a good loan on a good piece of property. More materials were required. Plaintiff had the materials, but would not let Dixon have them. Under these circumstances plaintiff alleges and offered evidence tending to show that the president of defendant corporation agreed that defendant would pay plaintiff for such materials as were furnished for use in the building being constructed on the Dixon land.

The president of a corporation is *ex vi termini* its head and general agent, and, nothing else appearing, may act for it in the business in which it is authorized to engage. See *Phillips v. Land Co.,* 176 N.C. 514, 97 S.E. 417; *Trust Co. v. Transit Lines,* 198 N.C. 675, 153 S.E. 158; *Warren v. Bottling Co.,* 204 N.C. 288, 168 S.E. 226; *Mills v. Mills,* 230 N.C. 286, 52 S.E. 2d 915. See also *Berry v. R. R.,* 155 N.C. 287, 71 S.E. 322.

Moreover it is manifest from the evidence that the transaction under consideration was a loan made by the defendant within the scope of its authorized business. The security for a loan is incidental to, and forms a part of it.

And "it is a recognized rule that a corporation is not restricted to the exercise of the powers expressly conferred upon it by its charter, but has the implied or incidental power to do whatever is reasonably necessary to effectuate the powers expressly granted and to accomplish the purposes for which it was formed, unless the particular act sought to be done is prohibited by law or by its charter," 13 Am. Jur. 772, Corporations 740.

Hence plaintiff, having offered evidence tending to show that defendant, through its president, made the original promise in suit, under the circumstances the evidence tends to show, and defendant having denied the promise alleged by plaintiff, the issue of fact was properly submitted to the jury. *Farmers Federation, Inc., v. Morris, supra.*

IV. Assignment of error No. 6, based on exception No. 6, is stated as follows: "That the court committed error in excluding the testimony of G. W. Hill as to his authority or lack of authority to bind his company under a contract to buy materials for use and benefit of a third person." In respect of this exception, it is sufficient to say that some affirmative declaration in the charter or by-laws of the corporation, or affirmative action by the stockholders or directors of the corporation in meetings duly called and held, would be required to restrict the general authority vested in the president to act for the corporation. And the charter and by-laws, and minutes of stockholders and directors meetings are the best evidence as to what they contain. Their contents may not be proved by parol evidence.

V. Assignment of error No. 9 is "that the court committed prejudicial error in charging the jury 'that the plaintiff knew this man Dixon and knew that Dixon was not a good risk; that the plaintiff through its agents refused the credit to Dixon knowing that he was not a good risk,' and refusing to correct the same when called to its attention." The record shows that the portions embraced within the inside quotations are separate parts of a paragraph in which the court was stating a contention of plaintiff. It is also noted that when attention was called to the evidence of plaintiff as to its reason for not extending credit to Dixon, the court

said to the jury: "Well, they said that, too. The witness testified that his company was not able to carry open accounts, especially one with Dixon, and that he also did not consider him a good risk. You will remember what they said about that." If it be conceded that the statement of the contention did not coincide exactly with the testimony, there is no contention that the witness did not testify that plaintiff declined to extend credit to Dixon. The reason plaintiff assigned for its action is immaterial. Hence, if there be error in the ruling of the court, it is harmless.

After due consideration to all assignments of error set out in the record on this appeal, we find

No error.