JUANITA J. CHANCE v. A. K. JACKSON

No. 728DC535

(Filed 28 March 1973)

**1. Evidence §§ 15, 29— checks drawn by defendant — explanation of checks — admissibility**

Where plaintiff brought an action to recover profits from a one-third interest in a farm and defendant counterclaimed for loans made to plaintiff, contending that her share of the profits had, by agreement, been applied to repayment of the loans, checks drawn by defendant and made payable to plaintiff's husband, a bank and "The Garden Center" (a business owned by plaintiff and her husband) and defendant's explanation of the checks were admissible in evidence

Chance v. Jackson

since the checks were competent to show that defendant advanced the amount of money which he contended he had advanced and the explanation allowed the jury to determine whether defendant had made the loans to plaintiff's husband, as plaintiff contended or to plaintiff herself, as defendant contended.

2. **Frauds, Statute of § 5; Rules of Civil Procedure § 8— failure to plead statute of frauds — original promise to pay — inapplicability of statute**

The statute of frauds was not applicable in this case where plaintiff did not plead that issue as an affirmative defense to defendant's counterclaim and where defendant alleged in his counterclaim only that he had made loans to the plaintiff, and his evidence, if considered in the light most favorable to him, would support a jury finding that plaintiff's obligation was based on original promises to repay loans made to her, though the proceeds of the loans were, at her request, furnished to her husband.

3. **Trial § 33— jury instruction — failure to explain law — new trial**

Plaintiff is entitled to a new trial where the trial court failed adequately to declare and explain the law arising on the evidence at trial of defendant's counterclaim for sums of money loaned plaintiff.

ON *certiorari* to review judgment of *Nowell, Chief District Judge,* 10 January 1972 Session of District Court held in WAYNE County.

Plaintiff and defendant, sister and brother, each own a one-third interest in a family farm which defendant has managed since the death of their mother on 12 September 1962. Plaintiff filed this suit on 13 January 1970 asking for an accounting and payment to her of her part of the rents and profits from the farm accruing since 12 September 1962. Defendant counterclaimed, alleging that since 10 May 1962 he had "made several loans to the Plaintiff and that the Plaintiff agreed that her share of the profits from the W. F. Jackson Farms be applied to the amount due the Defendant." Defendant attached as an exhibit to his counterclaim a statement purporting to show various amounts, which totaled $12,400.00, as "Loaned to Plaintiff" on various dates in 1962 and 1963, annual credits against the account of one-third of the farm income for each of the years 1962 through 1969, interest on the yearly balances, and a balance due on 31 December 1969 in the amount of $14,214.92, for which amount, with interest from 31 December 1969, defendant prayed judgment. Plaintiff filed a reply, denying all allegations of the counterclaim.

At the trial the parties stipulated that plaintiff's one-third share of the rents and profits from the farm for the years 1962

through 1969 inclusive was $2,987.24, which amount was the sum of the annual credits as set forth on the exhibit attached to defendant's counterclaim.

Defendant testified:

"I had an agreement with Mrs. Chance during the time when she asked me to loan her money. I visited in their home quite frequently, just the two of us actually. She is my sister and I am her only brother so I visited her home quite frequently and she and her husband were talking about going into a business known as the Garden Center, so he talked with me some and suggested that if they went into the business that they would need some money, so I then discussed this with my sister and asked her if this was her desire. She said that if I loaned her the money that she would see that I was paid back. This was my sister, Juanita Chance.

"As a result of that conversation, I in fact loaned her money. I started out with $1,500.00 and then a little bit later I had another request for money, as I remember that was $900.00 and a little bit later another request for money and that was $2,000.00. A little bit later another request and that was $8,000.00. As I recall, this totaled $12,400.00 that I loaned my sister."

Defendant also testified in effect that in 1964, after the business had gone into bankruptcy, plaintiff had agreed to his applying her part of the proceeds from the farm to the debt, and that he had so applied the amount stipulated to, $2,987.24.

In rebuttal, plaintiff and her husband, John B. Chance, each testified that the sums loaned by defendant had been loaned solely to plaintiff's husband and not to plaintiff, and that the husband was the sole owner of the business for which the loans had been made, the paintiff having no interest therein.

The jury answered issues as follows:

"1) What amount, if any, is the Defendant indebted to the Plaintiff for rents and profit received from the Jackson farm as alleged in the Complaint?

"Answer: None

"2) What amount, if any, is the Plaintiff indebted to the Defendant as alleged in the Counterclaim?

"ANSWER: $9,412.76"

From judgment that defendant recover of plaintiff $9,412.76, plaintiff in apt time gave notice of appeal. Subsequently this Court granted plaintiff's petition for writ of certiorari in order to permit her to perfect her appeal.

*Smith & Everett by James N. Smith for plaintiff appellant.*

*C. Horton Poe, Jr. for defendant appellee.*

PARKER, Judge.

[1]  Over plaintiff's objection the court permitted defendant to introduce in evidence four checks which had been drawn by defendant, two in 1962 and two in 1963, and which together totaled $12,400.00. Two of these checks were payable to plaintiff's husband, one was payable to a bank and was marked for deposit to the account of plaintiff's husband, and the fourth was payable to "The Garden Center." On the face of two of these checks was the notation, "For Loan." One of the two checks which was payable to plaintiff's husband, being also one of the two which bore on its face the notation, "For Loan," was endorsed by the payee "For Deposit to account Mr. or Mrs. John B. Chance."

In explanation of why he had made a check payable to paintiff's husband, defendant was permitted, over plaintiff's objection, to testify as follows:

"I made it out with no real significance as to whether it was to Mr. and Mrs. Johnnie B. Chance or Mr. Johnnie B. Chance, because I was loaning the money to my sister for her benefit and I just made the check out as I was instructed to make it out. I couldn't say absolutely as to who instructed me to make the check out in that manner. Each individual time, I asked her or got, it was just the agreement and I didn't get a new agreement for each transaction."

In response to his counsel's question as to why he had made out one of the checks to the bank, defendant testified: "That's what I was told to do at that time." Referring to all of the checks, defendant testified without objection that they "repre-

Chance v. Jackson

sent the amount of money that I have paid for the loan to Mrs. Chance."

The admission of these checks in evidence and the overruling of her objections to questions directed to defendant by his counsel as to why he had made the checks payable in the manner in which they had been made payable are the subjects of plaintiff's first three exceptions and assignments of error. In these we find no merit. The checks were competent to show that defendant had advanced the amount of money which he contends he had advanced. While the form in which the checks were made payable made them more consistent with plaintiff's contention that defendant had loaned money solely to her husband than with defendant's contention he had made loans to her, this presented a matter for the jury to evaluate in the light of defendant's explanations and all other relevant circumstances, including the relationship between the parties. The checks and defendant's testimony explaining them were admissible in evidence.

[2]   Consistent with her theory that the loans made by defendant were made to her husband and not to her, plaintiff contends that defendant's evidence at the most tends to show only a collateral oral promise on her part to pay the debt of her husband, thus bringing this case squarely within the provisions of the statute of frauds, G.S. 22-1. However, no issue as to the statute of frauds was presented by the pleadings in this case. Under the Rules of Civil Procedure the statute of frauds is now an affirmative defense, G.S. 1A-1, Rule 8(c), and plaintiff failed to plead it as a defense to defendant's counterclaim. Moreover, defendant alleged in his counterclaim only that he had made loans to the plaintiff, and his evidence, if considered in the light most favorable to him, would support a jury finding that plaintiff's obligation was based on original promises to repay loans made to her, though the proceeds of the loans were, at her request, furnished to her husband. Such original promises, if found to have been made, would not fall within the statute of frauds. *Piedmont Aviation v. Motor Lines,* 262 N.C. 135, 136 S.E. 2d 658; *Pegram-West v. Insurance Co.,* 231 N.C. 277, 56 S.E. 2d 607; *Farmers Federation, Inc. v. Morris,* 223 N.C. 467, 27 S.E. 2d 80; see also Annotation, 20 A.L.R. 2d 246.

[3]   In its charge to the jury the trial court, after recapitulating the evidence and stating the contentions of the parties, gave

certain general instructions as to what, in law, constitutes a contract. In the mandate portion of the charge with respect to the second issue, the court then instructed the jury as follows:

> "The burden of proof on this issue is upon the defendant, Mr. Jackson, to satisfy you from the evidence and by its greater weight that some time in 1962 and 1963 he made her a loan of $12,400.00; that she has not repaid him this money; that she still owes him this money; that as of December of 1969, she still owed him $14,214.92; that he has properly applied these proceeds off against this amount, then it would be your duty to answer this issue in favor of the defendant, anywhere from $14,214.92, down to nothing."

Appellant's assignment of error to this portion of the charge must be sustained. Defendant's evidence did not show any original understanding between him and his sister that he would lend to her, upon her credit and promise to repay, $12,400.00 or any other specific amount. Rather, defendant's evidence indicated, as he had alleged in his counterclaim, a series of loans made over a period of approximately ten months. There was no dispute but that these loans were made in the form of advances of funds, not to plaintiff, but to her husband. At no point in the charge did the trial court instruct the jury that it could answer the second issue in favor of the defendant only if it should find that one or more of these loans were made upon the express agreement, existing at the time the funds were advanced, that the loan was being made by defendant to plaintiff upon her promise to repay and upon the understanding that the funds were to be advanced to plaintiff's husband rather than directly to her. Neither did the court instruct the jury that it could answer the second issue in favor of defendant only in such amount as it should find had been so loaned by defendant to plaintiff. Under the evidence in this case the jury might well have found that some of the loans were made to plaintiff upon her original promise to pay, while other loans were made solely to her husband. For failure of the trial court adequately to declare and explain the law arising on the evidence in this case as required by G.S. 1A-1, Rule 51(a), appellant is entitled to a

New trial.

Judges VAUGHN and GRAHAM concur.