MYERS & CHAPMAN, INCORPORATED v. THOMAS G. EVANS, INCORPO-
RATED, THOMAS G. EVANS AND BRENDA EVANS, INDIVIDUALLY

No. 140PA88

(Filed 8 December 1988)

**1. Fraud § 3— application for payment—knowledge, information and belief—representation for fraud purposes**

Language in a subcontractor's notarized application for payment certifying "that to the best of his knowledge, information and belief" work has been completed according to the contract and the payments applied for were then due constituted a "representation" which is actionable for fraud if scienter is present.

**2. Fraud § 4— intent to deceive—reckless indifference or concealment of material fact insufficient**

While the concept of a statement "made with reckless indifference as to its truth," or one "recklessly made without knowledge as a positive assertion" or words of like import, or the concept of "concealment of a material fact" may satisfy the "false representation" element of ·fraud, those concepts do not satisfy the element of a statement "made with intent to deceive."

**3. Fraud § 4— intent to deceive**

Without the element of intent to deceive, the required scienter for fraud is not present, since the term "scienter" embraces both knowledge and an intent to deceive. To the extent that statements of the elements of fraud in prior decisions omit the essential element of the intent to deceive in a definition of fraud, they are disavowed.

**4. Fraud § 12— knowledge and intent to deceive—insufficient evidence**

The evidence was insufficient to support a jury finding that the individual defendant intentionally committed a fraud in the submission of applications to plaintiff for payment for specialty items purportedly purchased and stored in a bonded warehouse for installation by defendant's company in a construction project but which later could not be found where the evidence showed that defendant did not know whether the specialty items had actually been purchased and stored when he submitted the application for payment and that he had neither knowledge nor intent to deceive.

**5. Corporations § 15; Negligence § 7— application for payment—gross negligence by corporate officer**

The evidence was sufficient for the jury on the issue of defendant corporate officer's gross negligence in submitting to plaintiff contractor sworn applications for payment to the corporate subcontractor for specialty items purportedly purchased and stored in a bonded warehouse for installation in a construction project but which later could not be found where defendant certified "to the best of his knowledge, information and belief" that the items had been purchased and stored; defendant did not know whether the specialty items had actually been purchased and stored at the time he signed and swore

to the applications for payment; and defendant relied upon a handwritten application prepared by the subcontractor's project manager but failed to question the project manager about the specifics in the application for payment.

**6. Corporations § 13— corporate directors not guarantors of agents—instruction not required**

The trial court was not required to instruct the jury on whether corporate directors are guarantors or insurers of their agents where defendant directors were being sued for their own alleged personal misrepresentations and not for alleged misrepresentations of their employee.

**7. Corporations § 13— directors and officers—liability to third parties—instructions**

The trial court erred in giving the jury an instruction which suggested that corporate directors and managing officers are chargeable with an omniscient knowledge of the company's affairs and are liable for damages to third parties resulting from simple negligence.

**8. Public Officers § 9— notary public—no liability for misrepresentations in notarized instrument**

Where the female defendant acted only in her capacity as a notary and not as a corporate officer in signing an application for payment, she is not liable for misrepresentations made in the application.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 89 N.C. App. 41, 365 S.E. 2d 202 (1988), affirming in part and reversing in part the judgment entered by *Burroughs, J.*, at the 9 February 1987 session of Superior Court, MECKLENBURG County, and awarding the individual defendants a new trial. Heard in the Supreme Court 11 October 1988.

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Samuel D. Walker, for plaintiff-appellant.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Fred T. Lowrance, for defendant-appellees.*

*Miller, Johnston, Taylor, Allison and Hord, by James W. Allison, for The Carolinas Branch, Associated General Contractors of America, amicus curiae.*

MEYER, Justice.

On 14 December 1984, Myers & Chapman, Inc., plaintiff general contractor, entered into a written subcontract with corporate defendant Thomas G. Evans, Inc. (hereinafter "Evans, Inc."), to

furnish and install the heating, ventilating and air conditioning system for a shopping center in High Point, North Carolina. The shopping center, known as Westside Plaza, included a Food Lion grocery, an Eckerd drug store and several smaller shops. The original contract price of $104,500 was later increased to $113,865. The contract called for Evans, Inc., to submit periodic "Applications for Payment" to plaintiff general contractor as the work progressed. Each payment application was signed by individual defendant Thomas Evans, was in the following form and contained the following statement:

> The undersigned Contractor certifies that to the best of his knowledge, information and belief the Work covered by this Application for Payment has been completed in accordance with the Contract Documents, that all amounts have been paid by him for Work for which previous Certificates for Payment were issued and payments received from the Owner, and that current payment shown herein is now due.

> CONTRACTOR: Thomas G. Evans, Inc.

> By: _____     Date: _____

Each payment application was notarized by individual defendant Brenda Evans. The notary certificate was signed by her in her capacity as a notary public. Defendants Thomas Evans and his wife, Brenda, were the sole directors and officers of defendant Evans, Inc.

The controversy centers on Application for Payment No. 2, which Evans, Inc., submitted to plaintiff general contractor on 25 April 1984. This Application requested payment in the amount of $33,227 for equipment purportedly ordered and stored in a local bonded warehouse for eventual installation in the construction project. The amount requested included $11,247 worth of specialty items — principally small, sophisticated electronic devices — which later could not be found. The typed Application for Payment No. 2 delivered to plaintiff was based upon a handwritten application prepared by William Jay Gould, defendants' estimator and project manager. Gould's application, in turn, relied upon a written confirmation of receipt of goods issued by the warehouse to which the equipment had been shipped for storage. In May 1984, plaintiff paid Evans, Inc., for all the materials claimed to

Myers & Chapman, Inc. v. Thomas G. Evans, Inc.

have been purchased and stored and which were reflected in Application for Payment No. 2. In Application for Payment No. 3, submitted on 22 June 1984, Evans, Inc., recertified that the specialty items had been purchased and stored.

In August 1984, Thomas Evans decided to wind up his firm's business. Since the work on the Westside Plaza shopping center was still ongoing, Evans, Inc., contracted with Custom Comfort, Inc., to finish the job. Plaintiff general contractor, defendant subcontractor Evans, Inc., and Custom Comfort, Inc., all agreed that the project would be completed by Custom Comfort, Inc., for the monetary balance remaining on the contract between plaintiff general contractor and Evans, Inc. After Custom Comfort, Inc., began work, it was unable to locate the $11,247 in specialty items purportedly stored in the bonded warehouse and already paid for by plaintiff. Plaintiff reordered the specialty items, paid for them a second time, and brought suit to recover its loss.

The case against the individual defendants was tried on theories of (1) intentional fraud and (2) gross negligence such as to permit a fraud to be committed on plaintiff. At trial, plaintiff strove to prove that Thomas and Brenda Evans, by filing Applications for Payment Nos. 2 and 3, falsely represented to plaintiff that $11,247 in specialty items had been purchased and stored, that the Evanses knew that the representations were untrue at the time made, or that the representations were made in reckless disregard of whether they were true or not. At the conclusion of the trial, the court submitted nine issues to the jury. The issues submitted to the jury and its responses thereto, were as follows:

1. Is the defendant Thomas Evans, Inc., liable to the plaintiff for unjust enrichment?

ANSWER: Yes

2. Did the individual defendants, Thomas G. Evans or Brenda Evans, commit a fraud by submitting the payment application of April 20, 1984 or June 22, 1984 to Myers & Chapman, Inc.?

ANSWER: Thomas G. Evans                                      yes

Brenda Evans                                      no

3. Did Thomas G. Evans or Brenda Evans act with such gross negligence as officers and directors of Thomas G. Evans, Inc., so as to permit a fraud to be committed on Myers & Chapman, Inc.?

ANSWER: Thomas G. Evans                           yes

            Brenda Evans                               yes

4. Did Thomas G. Evans or Brenda Evans submit an application for payment to Myers & Chapman, Inc., knowing it to be false[?]

ANSWER: Thomas G. Evans                            no

            Brenda Evans                                no

5. Did Thomas G. Evans or Brenda Evans act in such a grossly negligent way, in the submission of the application for payment so as to permit a fraud to be committed on Myers & Chapman, Inc.?

ANSWER: Thomas G. Evans                           yes

            Brenda Evans                               yes

6. Was the conduct of Thomas G. Evans or Brenda Evans in commerce or did it affect commerce?

ANSWER: Thomas G. Evans                           yes

            Brenda Evans                               yes

7. ***Answer this issue ONLY if the answer to any portion of issue #2, 3, 4 or 5 was "No"***. Did the conduct of Thomas G. Evans or Brenda Evans mislead or deceive Myers & Chapman, Inc.?

ANSWER: Thomas G. Evans                           yes

            Brenda Evans                               yes

8. What amount, if any, is the plaintiff entitled to recover for compensatory damages?

ANSWER: $11,731

9. ***Answer this issue ONLY if you answered any portion of issue #2, 3, 4 or 5 "Yes"***. What amount, if any, is the plaintiff entitled to recover for punitive damages?

| ANSWER: Thomas G. Evans | $1.00 |
|---|---|
| Brenda Evans | $1.00 |

On the basis of these jury findings, the trial court stated in its judgment:

> That the jury's findings and evidence support the conclusions that the actions of the defendants caused or allowed a false application and certificate for construction payments to be given to the plaintiff; that said action was fraudulent and that the application and certificate was submitted under circumstances such that the defendants' actions were grossly negligent; that the conduct of the defendants misled and deceived the plaintiff; and that said action by the defendants took place in commerce and affected commerce.

Plaintiff elected not to pursue the jury's punitive damages award. Because the trial court concluded that defendants' actions constituted an unfair and deceptive trade practice, it trebled the compensatory damages of $11,731 awarded by the jury to a total of $35,193 and awarded attorney fees to plaintiff Myers & Chapman, Inc., in the amount of $10,000 plus costs of $531.00. The judgment on the total amount of $45,724 plus interest was entered jointly and severally against the corporate defendant and the individual defendants. Defendants appealed.

The Court of Appeals addressed two issues: (1) whether the evidence supported the jury's finding that individual defendants Thomas and Brenda Evans committed intentional fraud by submitting the payment applications (issue 2), and (2) whether the trial court's instruction on gross negligence so as to permit a fraud (issues 3 and 5) was defective. The Court of Appeals concluded that the language in Applications for Payment Nos. 2 and 3 did not constitute a "representation" of any kind and that the trial court's instruction on the two issues of gross negligence was erroneous. The Court of Appeals reversed the trial court on the intentional fraud issue (issue 2) and awarded a new trial to the individual defendants on the gross negligence issues (issues 3 and 5) because of the trial court's error in the jury instructions. The court found no error in the trial as to corporate defendant Evans, Inc. This Court granted plaintiff's petition for discretionary review.

## I.

We first address the issue of whether the evidence supported the jury's finding that defendant Thomas Evans intentionally committed fraud. Relying on *Myrtle Apartments v. Casualty Co.,* 258 N.C. 49, 127 S.E. 2d 759 (1962), the Court of Appeals disposed of this issue by concluding that since the disputed payment applications made no representations of past or existing facts, the language in the applications only stated an opinion or recommendation and was therefore not actionable. We disagree. In *Myrtle Apartments,* the plaintiff owner sought to recover the cost of a new boiler which it alleged it had been induced to install in its apartment building by the defendant insurer's false representation that the old boiler was defective and needed replacing. *Id.* The representation was contained in a letter to the plaintiff from defendant's engineer, in which he stated that the boiler's general condition was poor. He therefore "recommended that [the] boiler be replaced with a new or better one of standard construction as soon as [the] heating season [was] over." *Id.* at 50, 127 S.E. 2d at 760. The Court held that the engineer's report was a *recommendation* for a new boiler on the basis of the engineer's examination, that is, nothing more than the statement of an opinion, which could not constitute fraud. *Id.* at 52, 127 S.E. 2d at 761.

[1] The language in the Application for Payment documents in the case sub judice is very different. Here, the contractor "*certifie[d]*" that to the best of his knowledge, information and belief": (1) the work had been completed according to contract; (2) he had paid for work, the payment for which he had previously applied for and received from the Owner; and (3) current payments applied for were then due. (Emphasis added.) Moreover, each Application for Payment was subscribed and sworn to before a notary public. Such solemn documents bear no comparison to a mere recommendation contained in an unsworn letter. Indeed, as the *amicus curiae* brief of the Carolinas Branch, Associated General Contractors of America, Inc., points out, the most significant feature of the Application for Payment is that it allows parties to the construction transaction to rely upon its representations that work has been done for which payment is now due. Sworn statements inducing such reliance by one party and action based upon that reliance by the other are representations and can obviously constitute a fraud. We conclude that the language in

Applications for Payment Nos. 2 and 3 constitutes a "representation" and is actionable if scienter is present.

Since the Court of Appeals held that plaintiff could not prove a representation, it concluded that, ipso facto, plaintiff could not prove a fraud, inasmuch as a representation is one of the essential elements of an action for fraud. Because we hold that the language common to both Applications for Payment Nos. 2 and 3 is a representation which is actionable if scienter is present, we now review the evidence presented at trial to determine whether it was sufficient to support the jury's finding that defendant Thomas Evans committed a fraud.

Plaintiff Myers & Chapman, Inc., strenuously argues that the jury's fraud verdict passes muster because Thomas Evans "made exact, and exactly false, representations about purchased equipment" and because "[h]e failed to disclose that he had no knowledge." Relying on *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494 (1974), plaintiff contends that Thomas Evans' sworn statement had specificity sufficient under the circumstances to deceive plaintiff. We disagree. The record evidence before us distinguishes this case from *Ragsdale*. There, the defendant corporate directors' counterclaim for fraud was sufficient to overcome a motion for judgment on the pleadings where they alleged, inter alia, that the plaintiff former president falsely represented to them that the business was a "gold mine" and a "going concern," when he knew that the corporation's cash funds had decreased, that $20,000 had been borrowed for the corporation, that a corporate demand note was delinquent, that the corporate working capital was depleted and that corporate income was inadequate to pay operating expenses. *Id.* at 138, 209 S.E. 2d at 500-01. In *Ragsdale*, the plaintiff allegedly made the representations when he had personal knowledge that they were false. In contrast to *Ragsdale*, we find nothing in the record of the case before us to support the contention that Thomas Evans made the representations in Applications for Payment Nos. 2 and 3 based on his personal knowledge that they were false. No evidence exists to show that Thomas Evans had any knowledge, information or belief that the specialty items were not in the warehouse. In fact, as the transcript reveals, he had *no* knowledge about them at the time he swore to the statements in Applications for Payment Nos. 2 and 3. At trial, while plaintiff's attorney was ques-

tioning Thomas Evans as an adverse witness on the subject of his pretrial deposition, the following colloquy occurred:

Q. Then I asked you the next question. [Reading.]

"QUESTION: Did you have any knowledge on which to base that certificate?"

And what was your answer there?

A. I don't recall.

Q. [Reading.]

"ANSWER: No."

So, while you told me you were telling me the truth, under oath on that date, and when I asked you whether you had any knowledge at all on which to base this certificate, where you swore that upon information and belief certain things have happened, you told me, under oath, on September 8, 1985, that you had no knowledge to base that certificate on; didn't you?

A. That's correct.

Moreover, as the Court of Appeals correctly noted, although the jury found in answer to issue 2 that Thomas Evans had committed a fraud, the same jury found, in response to issue 4, that Thomas and Brenda Evans did not knowingly submit a false Application for Payment to plaintiff. In other words, the jury found no knowledge of the falsity of the statement made, which is an essential element of fraud. *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E. 2d 494.

[2, 3] Plaintiff argues that because it proved conscious and reckless ignorance of the truth, it has satisfied the "knowledge" element and has thus proved fraud. Plaintiff implies that in this circumstance, it is unnecessary to prove an intent to deceive because intent may be inferred by reckless indifference to the truth. This argument appears to be based on language in recent cases from this Court. *See, e.g., Britt v. Britt*, 320 N.C. 573, 579, 359 S.E. 2d 467, 471 (1987); *Johnson v. Insurance Co.*, 300 N.C. 247, 253, 266 S.E. 2d 610, 615 (1980); *Odom v. Little Rock & I-85 Corp.*, 299 N.C. 86, 92, 261 S.E. 2d 99, 103 (1980). In *Odom*, the essential elements of fraud were defined as follows:

To make out an actionable case of fraud plaintiff must show: (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false *or made it recklessly without any knowledge of its truth and as a positive assertion*; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

*Odom*, 299 N.C. 86, 91-92, 261 S.E. 2d 99, 103 (emphasis added). While the concept of a statement "made with reckless indifference as to its truth," or one "recklessly made without knowledge as a positive assertion" or words of like import, or the concept of "concealment of a material fact" have been held to satisfy the element of "false representation," those concepts do not satisfy the element of a statement "made with intent to deceive." Without the element of intent to deceive, the required scienter for *fraud* is not present. The term "scienter" embraces both knowledge *and* an intent to deceive, manipulate or defraud. Black's Law Dictionary 1207 (5th ed. 1979). *See, e.g., Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500; *Myrtle Apartments v. Casualty Co.*, 258 N.C. 49, 52, 127 S.E. 2d 759, 761; *Foster v. Snead*, 235 N.C. 338, 339-40, 69 S.E. 2d 604, 606 (1952) (representation must be made with fraudulent intent); *Vail v. Vail*, 233 N.C. 109, 113, 63 S.E. 2d 202, 205 (1951) (third essential fact needed to establish actionable fraud is intent to deceive); *Ward v. Heath*, 222 N.C. 470, 472, 24 S.E. 2d 202, 205 (1943) (material elements of fraud include intent to deceive).

In *Myrtle Apartments*, the Court stated that in order to constitute fraud

there must be false representation, known to be false, or made with reckless indifference as to its truth, *and it must be made with intent to deceive.*

*Myrtle Apartments*, 258 N.C. 49, 52, 127 S.E. 2d 759, 761 (emphasis added). Plaintiff itself relies on *Ragsdale*, which correctly defines the elements of fraud as follows:

While fraud has no all-embracing definition and is better left undefined lest crafty men find a way of committing fraud

which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) *made with intent to deceive*, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (emphasis added). *Britt, Johnson* and *Odom* may be interpreted to have expanded the definition of fraud to the point where the essential element of the defendant's intent to deceive is only implicitly recognized at best. To the extent that the statements of the elements of fraud in *Britt, Johnson, Odom* and other cases omit the essential element of the intent to deceive in a definition of fraud, they are hereby disavowed.

[4]   The record and transcript in the case sub judice reveal that Thomas Evans had neither knowledge *nor* intent to deceive plaintiff when he signed and swore to Applications for Payment Nos. 2 and 3. He had no scienter. We therefore affirm the Court of Appeals, but not for the reasons stated in its opinion. We hold that the evidence presented to the jury was insufficient to support a finding that Thomas Evans intentionally committed a fraud.

[5]   We are satisfied, however, that the same evidence was sufficient to support the submission of the issues to the jury based on Thomas Evans' gross negligence in subscribing and swearing to Applications for Payment Nos. 2 and 3.

As discussed above, an Application for Payment is a solemn document. It is intended to induce reliance in two ways: (1) it has the formal elements of trustworthiness, since it is a sworn statement that must be notarized, and (2) its language requires the submitting contractor to certify expressly that the work has been done. The *amicus curiae* notes that such documents keep the overall cost of a construction project down because the contractor need not spend time and money checking work with which he may not be familiar and as to which he may not have the same expertise as the subcontractor. The documents also speed payment to the party who does the work. The contractor's reliance upon a sworn Application for Payment protects the small subcontractor who often needs fast payment because he lacks the means to finance the contractor. In short, the content and form of the document employed here imply some knowledge on the part of the ap-

plicant that the work has been done. One who has *no* knowledge cannot certify that work *has been done* "to the best of his knowledge, information and belief."

The record and transcript in the case sub judice demonstrate that knowledge was neither had nor sought by the applicant. By his own testimony, defendant Thomas Evans admitted that when he signed and swore to the Applications for Payment, he had no knowledge of the breakdown of equipment for which payment was sought. He did not know whether the specialty items had actually been purchased and stored in the bonded warehouse. He asked no questions of his estimator and project manager, William Jay Gould. Defendant argues that he had no reason to ask any specific questions of Gould, since the application filled out by Gould in his own handwriting was the latter's representation to Thomas Evans as to work done and materials stored as of that date. He asserts, correctly, that officers and directors of corporations are permitted to rely on a trusted employee. *Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606 (1932). *See also Air Traffic Conf. of America v. Marina Travel*, 69 N.C. App. 179, 316 S.E. 2d 642 (1984). He points out that the evidence at trial from both plaintiff and defendants was to the effect that Gould was known to be honest and trustworthy. We agree with the Court's statement in *Minnis* that:

> Directors are not . . . insurers of the honesty and integrity of the officers and agents. Neither are they required to personally supervise all the details of business transactions.

*Minnis*, 202 N.C. at 303, 162 S.E. at 607. The Court went on to state, however, that:

> "Directors and managing officers of a corporation are deemed by the law to be trustees, or *quasi*-trustees, in respect to the performance of their official duties incident to corporate management and are therefore liable for either wilful or negligent failure to perform their official duties."

*Id.* (quoting *State v. Trust Co.*, 192 N.C. 246, 248, 134 S.E. 656, 657 (1926)). In *Minnis*, the Court found no error in the following portion of the trial court's instruction to the jury:

"The directors are liable if they suffer the corporate proper-
ty to be lost by gross inattention to the duties of their trust
and are not relieved of liability because they have no actual
knowledge of wrong doing if that ignorance is the result of
gross negligence."

*Id. See Mills v. Mills*, 230 N.C. 286, 52 S.E. 2d 915 (1949) (cor-
porate president could be held individually liable for a fraudulent
statement by the corporation if he was consciously ignorant of
whether a material fact was true or false).

Where a sworn Application for Payment to the effect that
work has been done "to the best of [the contractor's] knowledge,
information and belief" is submitted, some knowledge on the part
of the signatory is implied. This knowledge is easily obtainable by
the simple expedient of questioning the project manager in
charge of the particular construction job. In the light of the
salutary purposes of the Application for Payment, Thomas Evans'
total lack of knowledge and his failure to inquire of Gould con-
cerning the specifics in the Applications for Payment to which he
subscribed and swore was sufficient evidence to support the sub-
mission to the jury of the issues as to gross negligence. If the ap-
plicant truly has *no* knowledge, he should refrain from certifying
that the work has been done. If, as here, he certifies that work
has been done (or, as in this case, that items had been purchased
and stored) "to the best of his knowledge, information and belief,"
such certification implies knowledge on his behalf and is sufficient
to take the case to the jury on the issue of gross negligence.

II.

We turn now to review the trial court's instruction to the
jury on whether the individual defendants acted with such gross
negligence as to permit a fraud. The Court of Appeals concluded
that it was both incomplete and inaccurate. We disagree in part.

[6] The trial court took its instruction on the issue almost ver-
batim from *Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606, but omit-
ted the following limiting language from that decision:

Directors are not guarantors of the solvency of a cor-
poration, nor are they insurers of the honesty and integrity
of the officers and agents. Neither are they required to per-
sonally supervise all the details of business transactions. . . .

. . . .

Ordinarily, of course, directors would not be charged with notice by virtue of desultory, occasional or disconnected acts of mismanagement or fraudulent transactions, but in cases where mismanagement and fraud has been persistently and continuously practiced for substantial periods of time a jury must determine whether the directors, in the exercise of that degree of care which the law imposes, should have known of such practices and that persons dealing with the corporation would be injured thereby.

*Id.* at 303, 162 S.E. at 607. The Court of Appeals concluded that these passages should have been included in the trial court's instructions to the jury. This conclusion is in error. The quoted passages pertain to vicarious liability of directors for the acts of agents and employees. Here, defendants were being sued for their own alleged personal misrepresentations, not the alleged misrepresentations of their project manager. The representations made in Applications for Payment Nos. 2 and 3 were those of Thomas Evans, not the project manager, William Jay Gould. The trial court was not required, therefore, to instruct the jury on whether directors are guarantors or insurers of their agents.

[7] The trial court gratuitously added the following to its instruction:

It is immaterial whether the defendants, Mr. or Mrs. Evans[,] were cognizant of the fact that the equipment was not stored as certified. The law charges them with actual knowledge of the company's affairs and holds them responsible for damages sustained by others by reason of their negligence, fraud or deceit.

As the Court of Appeals correctly determined, this portion of the instruction was erroneous because it suggested to the jury that directors and managing officers are chargeable with an omniscient knowledge of the company's affairs and are liable for damages to third parties resulting from simple negligence. This is not the law in North Carolina. *See Minnis v. Sharpe*, 202 N.C. 300, 162 S.E. 606. This portion of the Court of Appeals' opinion is affirmed.

[8] The trial court's instructions and, concomitantly, the issues submitted to the jury concerning Brenda Evans contained a further flaw. The record and transcript reveal that Brenda Evans signed Applications for Payment Nos. 2 and 3 only in her capacity as a notary. In so doing, she was not acting in the capacity of an officer of Evans, Inc., or certifying the applications individually. Apparently she had no knowledge that she was an officer of the corporation until this suit was filed. There is no evidence that she had the responsibility of verifying the Applications for Payment or that she made any attempt to do so. A notary is not liable for damages where the notarization itself is correct, regardless of whether the representation in the document notarized is true or false. *See* 58 Am. Jur. 2d *Notaries Public* § 23 (1971). A notary does not swear to the truth of the information in the document being notarized. *Saevoff v. Steffen,* 123 Wash. 226, 212 P. 158 (1923). *See also Nelson v. Comer,* 21 N.C. App. 636, 205 S.E. 2d 537 (1974). Since Brenda Evans acted only in her capacity as a notary, we hold that she should. not have been included as a named individual defendant in the issues submitted to the jury or in the trial court's instructions on those issues.

The result is as follows: since the evidence presented at trial was insufficient to support the jury's finding that Thomas Evans committed an intentional fraud by submitting Applications for Payment Nos. 2 and 3 to plaintiff, a new trial on this issue is not warranted. Accordingly, because of the absence of fraud, plaintiff's claim of an unfair trade practice under N.C.G.S. § 75-1.1 is without basis. Since the evidence was sufficient, however, to support the jury's finding of gross negligence on the part of Thomas Evans individually, that portion of the Court of Appeals decision stands. Because Brenda Evans acted only in her capacity as a notary, she should not have been a named individual defendant in the issues submitted to the jury or in the trial court's instructions on those issues. That portion of the judgment is therefore vacated. The case is remanded to the Court of Appeals for further remand to the Superior Court, Mecklenburg County, for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.