**WEAVER, BENNETT & BLAND, P.A., Plaintiff,**

v.

**SPEEDY BUCKS, INC.;** Future Settlement Funding Corp., a Nevada Corporation; Resolution Settlement Corp., a Nevada Corporation; John M. Janis; Michael Graves; Bruce Benson; Chad Russell; John Johanson; and Perry Walton, Defendants.

No. CIV. 1:00CV249.

United States District Court, W.D. North Carolina, Asheville Division.

April 23, 2001.

## *ORDER*

THORNBURG, District Judge.

Pursuant to 28 U.S.C. § 636(b) and the standing Orders of Designation of this Court, United States Magistrate Judge Max O. Cogburn, Jr., was designated to consider pending motions in the captioned civil action and to submit to this Court recommendations for the disposition of these motions.

On March 30, 2001, the Magistrate Judge filed a Memorandum and Recommendation in this case containing proposed findings of fact and conclusions of law in support of a recommendation regarding Defendants' motion to dismiss Plaintiff's amended complaint. Counsel for the par-

ties were advised that any objections to the Magistrate Judge's findings were to be filed in writing within ten (10) days after service of the Recommendation. Taking into account the three-day service by mail provision and the exclusion of Saturdays and Sundays required by Fed.R.Civ.P. 6, the period within which to file objections expired on April 18, 2001. No written objections to the Magistrate Judge's Memorandum and Recommendation have been filed.

After a careful review of the Magistrate Judge's Recommendation, the Court finds that the proposed findings of fact are supported by the record and that the proposed conclusions of law are consistent with current case law. Accordingly, the Court hereby accepts the Magistrate Judge's Recommendation that Defendants' motion to dismiss be denied.

**IT IS, THEREFORE, ORDERED** that Defendants' motion to dismiss Plaintiff's amended complaint is hereby **DENIED**.

### MEMORANDUM AND RECOMMENDATION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendants' Motion to Dismiss Plaintiff's Amended Complaint. Plaintiff timely filed its response, and defendants timely filed their reply. Counsel for the respective parties have briefed the issues thoroughly. After careful consideration of defendants' motion and plaintiff's response, the undersigned enters the following findings, conclusions, and recommendation.

### I. Background

The following summation of facts is drawn from the complaint, as amended, which has been read in a light most favorable to plaintiff. It is intended to aid the court in the decision making process and review, but is not intended to be binding on the parties. This action involves plaintiff's representation of a woman ("the client") who was suing George Shinn, owner of the Charlotte Hornets National Basketball Association team, in an action in Columbia, South Carolina. George Shinn countersued the client in Charlotte, North Carolina. The client did not have the resources to fund the litigation.

In April 1999, an attorney working for plaintiff responded to a solicitation letter from defendants, who are alleged to be in the business of funding litigation through counsel. At the request of such attorney, one of the defendants allegedly traveled from Nevada to Charlotte and met with plaintiff's employees, and, thereafter, assured those attorneys that what was discussed would be held in confidence.

After those initial discussions, defendants and plaintiff purportedly signed a confidentiality agreement in· early May 1999 concerning the client's case. Based upon that agreement and assurances that defendants had no connection with their adversary, George Shinn, plaintiff shared information about their client's case with defendants. Later that month, defendants allegedly proposed to wire $110,000 to plaintiff's trust account, provided that plaintiff and their client would agree to pay defendants a percentage of any recovery obtained against George Shinn. Plaintiff allegedly responded to the offer by stating that the structure of the agreement would make settlement impossible and that South Carolina counsel for the client had advised that such contracts were unlawful in that jurisdiction.

A second proposal was made in late May 1999, with lower percentages and minimum paybacks, and plaintiff presented that proposal to the client. Upon further inquiry, however, attorneys for plaintiff

concluded that such proposal was illegal in South Carolina and was of questionable legality in North Carolina. Plaintiff purportedly communicated those conclusions to defendants, who allegedly continued to try to persuade plaintiff to take the offer.

According to plaintiff's amended complaint, immediately after it declined defendants' offer, defendants allegedly began dealing directly with the client and her own private investigator—contacts which were not disclosed to plaintiff. In June 1999, defendants entered into a contract with the client whereby they provided $200,000 to her, with a minimum repayment of $600,000 *and* a large percentage of any future recovery from George Shinn. Supposedly, neither defendants nor the client ever disclosed such agreement to plaintiff.

During the summer of 1999, settlement discussions occurred in the client's action against George Shinn, with proposed settlement offers of up to $1,000,000 being made by George Shinn. Despite plaintiff's efforts with the client, she would not accept anything less than $1,200,000. This confounded plaintiff and the presiding judge in South Carolina. Plaintiff relates that the client's unexplained immovability below the higher sum was due to the undisclosed agreement, which would have made a settlement for anything less than $1,200,000 a loss for the client. In a twist perhaps unique in law, a court loss resulting in no award of damages was better for the client than a million dollar settlement.

Plaintiff further alleges that during the course of the South Carolina litigation in 1999, defendants were, without knowledge of counsel, making inquiry and being informed of trial strategy and ongoing criminal investigations. A reasonable inference drawn from the pleadings is that defendants were keeping tabs on their "investment." In the end, the civil action was tried by a jury and a verdict returned against the client and for George Shinn.

Plaintiff has made claims for tortious interference with contract, fraud, and unfair and deceptive trade practices. It seeks actual damages of in excess of $325,000, punitive damages in excess of $10,000, and treble damages of actual damages in excess of $325,000. Defendants have moved to dismiss all of the claims.

## II. Standard

Defendants have moved for dismissal pursuant to Rule 12(b), Federal Rules of Civil Procedure, contending that plaintiff has failed to state a cognizable claim. Rule 12(b) authorizes dismissal based upon a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). As the Court discussed in *Neitzke:*

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts ... a claim must be dismissed, without regard to whether it is based on outlandish legal theory .... What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

*Id.,* at 1832 (citation omitted). For the limited purpose of making a recommendation as to disposition of defendants' motion, the undersigned has accepted as true the facts alleged by plaintiff in the com-

plaint and viewed those facts in a light most favorable to plaintiff.

## III. Citation of the North Carolina Rules of Civil Procedure

In responding to the motion, plaintiff first argues that defendants' motion must be denied, inasmuch as defendants have moved to dismiss under the North Carolina Rules of Civil Procedure, which, in this court, are the wrong rules. Plaintiff is quite correct in pointing out that the Federal Rules of Civil Procedure, not the North Carolina Rules of Civil Procedure, apply in federal court, even where this court sits with diversity jurisdiction.

■ While federal courts apply state law to the merits of diversity claims, federal procedure is applied in determining whether those claims can move forward. *See Mid–America Pipeline Co. v. Lario Enters., Inc.,* 942 F.2d 1519, 1524 (10th Cir.1991). The mistake made by defendants herein in citing state law is both common and *de minimis,* in that North Carolina's Rule 12 is nearly identical to Federal Rule 12. The undersigned, therefore, will not recommend that defendants' motion be denied on such basis.

## IV. Substantive Discussion

### A. Introduction

In moving to dismiss, defendants generally argue that plaintiff's claim should be dismissed because "Plaintiff is unable to prove the third, fourth and fifth elements ..." as to the first cause of action for tortious interference with contract. Defendants are attempting to apply to a Rule 12(b)(6) motion a summary-judgment standard, which requires production of proof.

As discussed above, Rule 12(b)(6) simply requires a plaintiff to allege facts, which if *later* proved, would support a finding in its favor on each and every element of the cause of action. To that end, the court has reviewed each claim asserted by plaintiff and determined, for the reasons discussed below, that plaintiff has alleged facts which, if proved, would support each claim asserted and that each claim has been properly asserted under North Carolina law.

### B. Tortious Interference With Contract

■ The essential elements of plaintiff's common-law claim for tortious interference with contract are, as follows:

(1) a valid contract between plaintiff and a third person that confers upon plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) the defendant acts without justification; and (5) the defendant's conduct causes actual pecuniary harm to plaintiff.

*Stephenson v. Warren,* 136 N.C.App. 768, 774, 525 S.E.2d 809 (2000). In support of such claim, plaintiff has alleged that it had a contingent fee contract with the client (Amended Complaint, at ¶ 51), defendants knew of such contract (*id.,* at ¶¶ 51–52), defendants induced client to enter into a secret agreement and to violate her contractual duty to plaintiff (*id.,* at ¶ 53), defendants were third parties to the action with no lawful interest (*id.,* at ¶¶ 54, 55, 56 & 57), and plaintiff sustained an actual loss in excess of $350,000 (*id.,* at ¶ 56).

Plaintiff, therefore, has alleged facts that, if *later* proved, would support each and every element of a common-law claim for tortious interference with contract. Consequently, the undersigned will recommend that defendants' motion to dismiss the first cause of action be denied.

## C. Fraud

■ In *Myers & Chapman v. Thomas G. Evans*, 323 N.C. 559, 374 S.E.2d 385 (1988), the North Carolina Supreme Court set forth the general elements of common-law fraud, which may be summarized, as follows:

(1) a false representation or concealment of a past or existing fact;

(2) that was reasonably calculated to deceive;

(3) made or done with the intent to deceive;

(4) that actually deceived a plaintiff, who had reasonably relied on the deception; and

(5) plaintiff suffered damages as a result of his reliance.

*Id.*, at 568, 374 S.E.2d 385. To plead a fraud claim properly, a plaintiff must plead with particularity, as required by Federal Rule 9(b), as to each of the substantive elements specified by North Carolina law. *See Odom v. Little Rock & I–85 Corp.*, 299 N.C. 86, 91–92, 261 S.E.2d 99 (1980).

Plaintiff has alleged false representations or concealment of a past or existing fact, as follows:

(1) that defendants would work only through counsel and contracted only with counsel (from which a reasonable inference arises that they would not contact and solicit the client directly);

(2) that defendants would rely on the client's relationship with the attorney to assure repayment; and

(3) that defendants concealed their agreement with plaintiff's client.

Amended Complaint, ¶¶ 59–61, & 63.

Plaintiff has also alleged that such claimed falsehoods or acts of concealment were reasonably calculated to deceive, *id.*, at ¶ 60 & 63, and that the acts were done with an intent to defraud, *id.*, at ¶¶ 59, 60, & 63. As to the element of reasonable reliance, plaintiff alleges that it reasonably relied upon the false information supplied by defendants in sharing with defendants confidential client information after securing confidentiality and nondisclosure agreements from defendants. *Id.*, at ¶ 61. As to the final element, plaintiff has alleged damages in an amount exceeding $10,000.

Under Rule 9(b), the issue becomes whether plaintiff has made such allegations with particularity—that is, so that defendants may know the wrongful acts they are accused of committing. Plaintiff's amended complaint is clear and includes dates, people, and places where the alleged fraud was perpetrated. Finding that the allegations of the amended complaint satisfy both federal procedural rules and state substantive law, the undersigned will recommend that defendants' motion to dismiss the second cause of action be denied.

## D. Unfair and Deceptive Trade Practices

■ As provided in *Kewaunee Scientific Corp. v. Pegram*, 130 N.C.App. 576, 503 S.E.2d 417 (1998), the statutory tort of unfair and deceptive trade practices has three elements, which may be summarized, as follows:

(1) an unfair or deceptive act or practice, or method of competition;

(2) in or affecting commerce;

(3) which proximately causes injury to the plaintiff.

*Id.*, at 580, 503 S.E.2d 417. In this case, plaintiff has alleged a number of acts, including the following:

(1) unlawful barratry, which is stirring up quarrels and suits, *State v. Batson*, 220 N.C. 411, 17 S.E.2d 511 (1941);

(2) champerty—a bargain by a stranger with a party to a lawsuit to bear the costs in exchange for a stake in the outcome, *Charlotte–Mecklenburg Hosp. Auth. v. First of Georgia Ins. Co.,* 340 N.C. 88, 91, 455 S.E.2d 655, 657 (1995);

(3) maintenance, defined as "an officious intermeddling in a suit, which in no way belongs to one, by maintaining or assisting either party with money or otherwise to prosecute or defend it," *Smith v. Hartsell,* 150 N.C. 71, 76, 63 S.E. 172 (1908); and

(4) that defendants employed unfair and deceptive practices in securing information from plaintiff.

Plaintiff has alleged further that while such unlawful acts potentially furthered defendants' business, they caused injury to plaintiff's business through interfering with plaintiff's representation of its client. Plaintiff has alleged specifically that all such acts were done in or affecting commerce. Amended Complaint, ¶ 67.

Inasmuch as plaintiff has alleged facts that would support each and every element of its claim, the undersigned will recommend that defendants' motion to dismiss such claim be denied.

### E. Defendants Sued in Their Individual Capacities

■■ As a matter of law, an officer, employee, or agent of a corporation may be held liable in his or her individual capacity for commission of a tort, even if that tort was committed in furtherance of the corporation's business. *Wolfe v. Wilmington Shipyard,* 135 N.C.App. 661, 670, 522 S.E.2d 306 (1999). An employee, however, cannot be held personally liable unless he or she actively participated in the tort. *Wilson v. McLeod Oil Co.,* 327 N.C. 491, 398 S.E.2d 586 (1990). For example, while it is appropriate for a truck driver to be held personally liable for a truck accident in which he was at fault, it would not be appropriate to bring in fellow employees, officers, or directors unless it could be alleged that they were somehow personally involved in or contributed to the accident. The undersigned, therefore, will recommend that dismissal on such basis be denied.

### RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Motion to Dismiss be **DENIED**.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within ten (10) days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), *reh'g denied,* 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *United States v. Schronce,* 727 F.2d 91 (4th Cir.), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).

This Memorandum and Recommendation is entered in response to defendants' Motion to Dismiss Plaintiff's Amended Complaint (# 18).

March 30, 2001.