UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-2062

WILLIAM C. HARDIN, JR.,

Plaintiff - Appellant,

v.

BELMONT TEXTILE MACHINERY COMPANY; WALTER RHYNE,
individually and in his official capacity as a corporate
officer; JEFFREY RHYNE, individually and in his official
capacity as corporate President,

Defendants - Appellees.

Appeal from the United States District Court for the Western
District of North Carolina, at Charlotte. Graham C. Mullen,
Senior District Judge. (3:05-cv-00492-GCM)

Argued: September 23, 2009          Decided: December 8, 2009

Before KING and AGEE, Circuit Judges, and James P. JONES, Chief
United States District Judge for the Western District of
Virginia, sitting by designation.

Affirmed in part and reversed and remanded in part by
unpublished per curiam opinion.

**ARGUED:** William Everett Moore, Jr., GRAY, LAYTON, KERSH,
SOLOMON, SIGMON, FURR & SMITH, PA, Gastonia, North Carolina, for
Appellant. George Bryan Adams, III, VAN HOY, REUTLINGER, ADAMS
& DUNN, Charlotte, North Carolina, for Appellees. **ON BRIEF:**
Philip M. Van Hoy, VAN HOY, REUTLINGER, ADAMS & DUNN, Charlotte,
North Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William C. Hardin, Jr., appeals the district court's orders disposing of his claims against his former employer, Belmont Textile Machinery Company ("Belmont") and its owners and officers, Jeffrey and Walter Rhyne. Hardin contends that the district court erred by dismissing or granting summary judgment as to his claims for (1) wrongful retaliatory discharge under North Carolina law; (2) common law fraud; (3) wrongful discharge due to age and disability discrimination; and (4) violation of North Carolina's Wage and Hour Act. Hardin also argues that the district court erred by not remanding the case to state court for resolution of his state law claims after the court had disposed of his federal claims.

We remand the case to the district court for further consideration of Hardin's claim that Belmont violated North Carolina's Wage and Hour Act by failing to repay his voluntary salary reductions. We affirm the district court's decision as to Hardin's other claims.

I.

Belmont manufactures machines and parts used to twist and treat yarn. In 1997 Belmont hired Hardin as an engineering manager and Hardin rose in the company's ranks, reaching the

position of controller and vice president before he was terminated in 2005.

Starting in late 2001, the company struggled financially. Because of these difficulties, Belmont's president, Jeffrey Rhyne, met with the company's salaried employees and asked them to take a voluntary pay cut beginning in November of 2001. The employees were free to determine whether they wanted to reduce their salary, and if so, how much. Rhyne told employees that Belmont would repay them if and when the company returned to profitability. Hardin voluntarily participated in the requested salary reduction.

In 2002, Hardin received a pay raise retroactive to November 2001. Because the company was still experiencing financial difficulties, Rhyne asked Hardin to take an additional salary reduction by not receiving the money due from the retroactive raise. Hardin agreed. In 2003, Belmont had further financial difficulties and turned, once again, to its salaried employees including Hardin for help. The company again promised that the reductions would be repaid if and when the company returned to profitability.

While Belmont's financial future became stable in 2005, its relationship with Hardin turned rocky. In July 2005, the firm fired Hardin, then sixty years old, after it discovered that Hardin was, among other things, moonlighting for another firm on

4

company time.  Neither Hardin nor any other employees, including the Rhynes, have been repaid the voluntary salary reductions. Belmont contends that the conditions of repayment have not yet been met because the company has not reached "a sufficient level of profitability." (Appellees' Br. 38.)

In response to his discharge, Hardin sued Belmont and the Rhynes in state court, and the case was timely removed to the district court below. The defendants then filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  The district court dismissed several of Hardin's claims, including the claim that his discharge violated a North Carolina statute that prohibits retaliatory action against a state employee for reporting, or refusing to carry out, unlawful activity.

After completing discovery, the defendants moved for summary judgment on the remaining claims.  The district court granted the motion.  In its decision, the court concluded that: (1) Hardin could not claim protection based on North Carolina's whistleblower statute; (2) Hardin had failed to prove the elements of a fraud claim; (3) Hardin had insufficient proof of age discrimination; and (4) the statute of limitations barred

5

Hardin's claim for unpaid wages under the North Carolina Wage and Hour Act.[1]

## II.

Our review of a district court's dismissal for failure to state a claim is conducted under a de novo standard of review. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1998). In considering a motion to dismiss, the complaint's factual allegations must be accepted as true and the facts must be construed in the light most favorable to the plaintiff. Id.

Our review of a summary judgment order also occurs under a de novo standard. Cont'l Airlines, Inc. V. United Airlines, Inc., 277 F.3d 499, 508 (4th Cir. 2002). In such a review, we must determine whether there is a genuine dispute about any material facts. Id. A grant of summary judgment is improper if such a dispute exists. Id.

### A.

Hardin argues that he has a claim for wrongful discharge based on North Carolina's public employee whistleblower statute. We disagree.

---

[1] The district court also resolved other claims against Hardin, which he has not appealed.

The North Carolina whistleblower statute prohibits the retaliatory discharge of a state employee who reports, or refuses to carry out, unlawful activity. N.C. Gen. Stat. § 126-85 (2007). While Belmont is not a state entity and therefore section 126-85 does not by its terms apply to Hardin's employment, he argues that the "public policy" created by the statute may serve as the basis for a common law wrongful discharge claim under state law, applicable to private employment.

We agree with the district court that the limited public policy exceptions recognized by North Carolina law to the at-will employment doctrine do not include the state whistleblower statute, since there is no indication that its protections were intended to apply to the public generally. See Buser v. S. Food Serv., Inc., 73 F. Supp. 2d 556, 566 (M.D.N.C. 1999).

B.

The district court also correctly determined that Hardin was unable to prove under North Carolina law that Belmont committed fraud.

To prove common law fraud, a plaintiff must demonstrate that: (1) the defendant made a false representation of a material fact; (2) the defendant knew that the statement was false at the time of utterance; (3) the defendant made the false statement with the intention that the plaintiff would act upon

7

it; (4) the plaintiff acted upon the false statement; and (5) the plaintiff suffered injury. See Myers & Chapman v. Thomas G. Evans, Inc., 374 S.E.2d 385, 391 (N.C. 1988).

There is no evidence that Jeffrey Rhyne misrepresented any material facts when he asked employees to voluntarily forgo salaries because the firm was broke. Hardin, Rhyne, and other company officials testified that the company faced a bleak financial outlook in 2001 and 2002, when the reductions occurred. Hardin agreed that when Rhyne made the request, Hardin knew the salary contributions were necessary to avoid additional layoffs and to prevent the firm from closing. The company's financial statements corroborated this testimony.

Rhyne's repayment promise cannot constitute a false representation of a material fact because there is no evidence that Rhyne intended to break the promise when he asked employees for help. Hardin conceded in his deposition testimony that when Rhyne asked for the salary reduction Rhyne intended to repay the money when the firm became profitable. Hardin also testified that he understood his contribution was "a risky loan" and that it was possible the company would never be able to repay him. (J.A. 177.)

Based on these undisputed facts, we conclude the district court did not err by concluding that Hardin failed to establish a prima facie case of fraud.[2]

C.

We also uphold the district court's grant of summary judgment against Hardin on his claim of wrongful discharge on account of his age and disability.

In North Carolina, employees discriminated against may pursue a wrongful discharge cause of action against an employer based on the North Carolina Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.2 (2007). Wrongful discharge claims asserted under the EEPA are analyzed under the same burden-shifting scheme as federal discrimination statutes. N.C. Dep't of Corr. v. Gibson, 301 S.E.2d 78, 82–84 (N.C. 1983).

If a plaintiff has no direct evidence of discrimination, he may establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). To do so, a plaintiff must demonstrate: "(1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his

_____

[2] The district court alternatively concluded that the statute of limitations barred Hardin's fraud claim. Because of our holding, it is unnecessary to address this issue.

9

employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Whether an employee is performing at a level that meets legitimate expectations is based on the employer's perception. Id.

We agree with the district court that Hardin's claim of wrongful discharge fails because he has no direct proof of discrimination and his allegations do not create a prima facie case.

Hardin agreed that no "age-related comments" were made about him during his employment (J.A. 274) and because any such direct proof of discrimination is lacking, Hardin must create a prima facie case under the McDonnell Douglas standard. King, 328 F.3d at 149. Hardin's proof must show, among other things, that at the time of termination, Belmont officials believed Hardin met the company's legitimate work expectations and that Belmont replaced Hardin with someone outside of the protected classification. Hardin failed to establish either element.

The record contains ample evidence showing that Belmont officials thought Hardin's performance was sub par. For example, Hardin was terminated because he worked for another firm while on the clock for Belmont. Hardin's subordinates had lodged complaints about his abrasive demeanor and poor attitude.

10

And, while working for Belmont as a corporate officer, Hardin usurped a business opportunity for Belmont by secretly working for a third party with which Belmont hoped to contract.

From this evidence Belmont's opinion as to Hardin's performance is clear -- Hardin did not meet the company's reasonable expectations.

Moreover, the record is devoid of evidence showing that Belmont replaced Hardin with a worker outside the protected class. In fact, officials testified that the company absorbed his position and used a part-time contractor to perform some of the work.

Hardin also asserted a claim directly under the federal Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621-634 (West 2008). For the same reasons outlined above, we agree that summary judgment was also appropriate as to this claim.

D.

Hardin contends that under North Carolina's Wage and Hour Act (the "Act"), Belmont owes Hardin the wages he contributed in the voluntary salary reductions. Specifically, the Act requires an employer to pay all wages when due, N.C. Gen. Stat. § 95-25.6 (2007), and, once an employee leaves the company for any reason, no later than the next regular payday, N.C. Gen. Stat. § 95-25.7 (2007).

11

The district court concluded that the Act's two-year statute of limitations, N.C. Gen. Stat. § 95-25.22(f)(2007), barred this claim. On appeal, Hardin argues two points. First, Hardin contends that his claim under section 95-25.7 could have accrued only after his termination. Hardin also asserts that the district court erred by basing its conclusion upon his one deposition answer as to when Belmont regained profitability. We agree with Hardin that his claim is not barred by the statute of limitations.

The district court held that the statute of limitations had run because it found that Hardin believed that Belmont had returned to profitability and thus owed him the return of his voluntary salary reductions long before he was terminated. The district court relied on language in Hamilton v. Memorex Telex Corp., 454 S.E.2d 278, 282 (N.C. Ct. App. 1995), a case also involving a claim for unpaid wages under the Act, in determining that Hardin's claim was time barred. In Hamilton, the North Carolina Court of Appeals upheld a trial court's conclusion that a plaintiff's claim for paid vacation time was not barred by the statute of limitations because his claim under the Act did not accrue until he left employment. Id. While the court in Hamilton noted that "[t]he statute begins to run on the date the promise is broken" -- language cited by the district court -- it also pointed out that "[i]n no event can the limitations period

12

begin to run until the injured party is at liberty to sue." Id. (quoting Glover v. First Union Nat'l Bank of N.C., 428 S.E.2d 206, 208 (N.C. Ct. App. 1993)).

At least one of Hardin's contentions is premised on the Act's obligation to pay all wages due once employment ends. He had no cause of action under section 95-25.7 until Belmont refused to pay him the voluntary salary reductions after he was fired. Since Hardin was terminated in June of 2005 and this suit was filed in October of that year, the action was properly instituted within the two-year limitations period.

Hardin also argues that even under the district court's view of when his cause of action accrued, it erred in relying upon a single answer from his deposition as the basis for the conclusion that the statute of limitations barred his wage claim.

During his December 2006 deposition, Hardin testified that Rhyne had pledged to return the voluntary salary reductions once the firm became profitable. While looking at a financial spreadsheet dated June 1, 2005, Hardin stated that the company had become profitable three and a half years earlier. At another point in the deposition, however, Hardin indicated that the company had reached minimal profitability in March 2004, which corresponded with Rhyne's deposition testimony.

13

Using the district court's interpretation of Hardin's answer the cause of action would have accrued about December 2001, or, three and a half years prior to June 2005. Hardin claims his deposition answer meant the company regained profitability three and a half years before the December 2006 deposition, in June 2003, the first quarter of the 2004 fiscal year.

Hardin's explanation about his deposition answer is not entirely satisfactory. But the record is otherwise clear. Several company officials testified that the 2004 fiscal year, which ended on March 31, 2004, was the first time since 2000 that the company had earned a profit. Hardin filed suit on October 25, 2005, within two years after this milestone.

For these reasons, we find that the district court erred in determining that the statute of limitations barred Hardin's claim under the North Carolina Wage and Hour Act.[3]

---

[3] Belmont argues that the Act does not apply to Hardin's claim because the voluntary salary reductions do not qualify as wages under the statutory definition. However, the statute broadly defines wages to include "other amounts promised when the employer has a policy or a practice of making such payments," N.C. Gen. Stat. § 95-25.2(16) (2007), which would include Hardin's claim.

Of course, Belmont contends that the voluntary salary reductions are not yet due because the company has not obtained "sufficient" profitability to pay them. The correct construction of Belmont's promise and whether it has been broken are issues for determination after remand.

14

E.

Hardin's last assignment of error is that the district court should have remanded the state claims to state court instead of dismissing them after the court had dismissed his federal claims.

Federal courts may have supplemental jurisdiction over a state cause of action if both the state and federal claims arise from the same transaction or occurrence. 28 U.S.C.A. § 1367 (West 2006); UMWA v. Gibbs, 383 U.S. 715, 725 (1966). The supplemental jurisdiction doctrine "indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for an action drops away." Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir. 1996). Once a trial court extinguishes all federal claims, it has broad discretion in deciding whether to retain jurisdiction. Id. at 110.

The federal issues before the district court were closely connected to Hardin's state claims. And, the district court also had a long and close familiarity with the facts. Given these circumstances, the district court did not abuse its discretion when it ruled on all of the issues raised by Belmont's summary judgment motion.

15

III.

For the foregoing reasons, the district court's determination as to Hardin's unpaid wage claim is reversed and that claim is remanded for further proceedings. The district court's judgment as to the remaining claims is affirmed.

AFFIRMED IN PART AND
REVERSED AND REMANDED IN PART